[868 NE2d 199, 836 NYS2d 518]

The People of the State of New York, Appellant, v Abel Rosas, Respondent.

Argued March 27, 2007; decided May 8, 2007

## POINTS OF COUNSEL

*Richard A. Brown, District Attorney,* Kew Gardens (*Sharon Y. Brodt* and *John M. Castellano* of counsel), for appellant. Consecutive sentences were authorized for the two counts of first-degree murder involving two victims. (*People v Ramirez,* 89 NY2d 444; *People v Laureano,* 87 NY2d 640; *People v Brown,* 80 NY2d 361; *People v Brathwaite,* 63 NY2d 839; *People v Truesdell,* 70 NY2d 809; *People v Bond,* 90 NY2d 877; *Blockburger v United States,* 284 US 299; *People v Okafore,* 72 NY2d 81; *People v Ramos,* 99 NY2d 27; *People v West,* 81 NY2d 370.)

*Winston McIntosh,* New York City, and *Lynn W.L. Fahey* for respondent. The Appellate Division correctly determined that respondent's first-degree murder sentences must run concurrently because the same act—the double murder of a husband and wife during the same criminal transaction—constituted both offenses, or, alternatively, because the murder of each victim was a material element of the offense as to the other. (*People v Ramirez,* 89 NY2d 444; *People v Laureano,* 87 NY2d 640; *People v Day,* 73 NY2d 208; *People v Underwood,* 52 NY2d 882; *People v Bryant,* 92 NY2d 216; *People v Salcedo,* 92 NY2d 1019; *People v Brown,* 80 NY2d 361; *People v Truesdell,* 70 NY2d 809; *People v Brathwaite,* 63 NY2d 839; *People v Parks,* 95 NY2d 811.)

## OPINION OF THE COURT

CIPARICK, J.

Defendant was convicted of two counts of first degree murder under Penal Law § 125.27 (1) (a) (viii) for causing the deaths of two individuals during the same criminal transaction. The issue presented by this appeal is whether the resulting sentences imposed must run concurrently or consecutively to one another under Penal Law § 70.25 (2). We conclude, under the principles stated in *People v Laureano* (87 NY2d 640 [1996]), that the sentences must be served concurrently.

In the early morning hours of March 30, 1997, defendant broke into the apartment of his former girlfriend, Yurate Dainiene, and shot her and her husband, Rimgaudas Dainys, to death as they slept in their bed. Defendant proceeded to trial on several charges including, as relevant here, charges of first degree murder.[1] The court instructed the jury in accordance with the Criminal Jury Instructions for Penal Law § 125.27 (1) (a) (viii). Specifically, for the first count the court told the jury that the People were required to prove, in pertinent part:

> "1. That . . . the defendant, Abel Rosas, caused the deaths of [both] Yurate Dainiene and Rimgaudas Dainys[;] . . .
>
> "2. That the defendant did so with the intent to cause the death of Yurate Dainiene . . . and the intent to cause either the death or serious physical injury of Rimgaudas Dainys[; and]
>
> "3. That the defendant caused both deaths during the same criminal transaction."

For the second count, the positions of the victims were reversed, with Rimgaudas Dainys as the primary victim.

During deliberations, the jury sent a note indicating that there was "substantial confusion" regarding the first degree murder counts, asking the court to explain the difference between the two and inquiring whether they were "mutually exclusive." Supreme Court responded by recharging the elements of murder in the first degree for each count and advising the jury that the two counts were not mutually exclusive.

---

1. This was defendant's third trial on these charges. His first trial ended in a mistrial. After a second trial, he was convicted of two counts of first degree murder, two counts of second degree murder and one count of criminal possession of a weapon in the second degree. However, the Appellate Division reversed his conviction and ordered a new trial due to the People's failure to disclose certain *Rosario* material (297 AD2d 390 [2d Dept 2002]).

Defendant was convicted of two counts of first degree murder (Penal Law § 125.27 [1] [a] [viii]), two counts of second degree murder (Penal Law § 125.25 [1]) and one count of criminal possession of a weapon in the second degree (Penal Law § 265.03). Supreme Court sentenced him to two consecutive terms of life imprisonment without parole for the first degree murder convictions, to run concurrently with two consecutive indeterminate terms of 25 years to life for the second degree murder convictions and an indeterminate term of 7½ to 15 years for criminal possession of a weapon in the second degree.

The Appellate Division modified by vacating the convictions for murder in the second degree and dismissing those counts of the indictment as inclusory concurrent counts of first degree murder. It further found that the imposition of consecutive sentences on the first degree murder convictions violated Penal Law § 70.25 (1) and (2) because there was an identical "act" underlying both counts of murder in the first degree—the double murder of both husband and wife. Moreover, "the murder of the wife was a material element of the offense as to the husband and vice versa" (30 AD3d 545, 546 [2006]). The Court ordered the remaining sentence for weapons possession to run concurrently with the sentences for murder. A Judge of this Court granted the People leave to appeal and we now affirm.

Penal Law § 70.25 addresses the legality of concurrent or consecutive prison sentences. Subdivision (2) provides that

> "[w]hen more than one sentence of imprisonment is imposed on a person for two or more offenses committed through a single act or omission, or through an act or omission which in itself constituted one of the offenses and also was a material element of the other, the sentences . . . must run concurrently."

The People have the burden of establishing the legality of consecutive sentences (see Laureano, 87 NY2d at 643).

In this context, the Court has interpreted "act or omission" to include the actus reus of the offense.[2]

> "Because both prongs of Penal Law § 70.25 (2) refer to the 'act or omission,' that is, the *actus reus* that constitutes the offense, the court must determine

---

2. Actus reus is defined as "[t]he wrongful deed that comprises the physical components of a crime and that generally must be coupled with *mens rea* to establish criminal liability" (Black's Law Dictionary 39 [8th ed 2004]).

whether the *actus reus* element is, by definition, the same for both offenses (under the first prong of the statute), or if the *actus reus* for one offense is, by definition, a material element of the second offense (under the second prong)" (*Laureano*, 87 NY2d at 643 [citations omitted]; *see also People v Bryant*, 92 NY2d 216, 231 [1998]; *People v Ramirez*, 89 NY2d 444, 451 [1996]).

A court must look to the statutory definitions of the crimes at issue to decide whether concurrent sentences are warranted (*see Laureano*, 87 NY2d at 643).

Therefore, in our analysis we must initially look to the language of the first degree murder statute. Penal Law § 125.27, enacted as the State's capital murder statute, requires a defendant to have committed intentional murder of a person and enumerates 13 aggravating factors that elevate the offense to first degree murder (*see People v Miller*, 6 NY3d 295, 301 [2006]). Specifically, Penal Law § 125.27 (1) (a) (viii) and (b) states that,

"[a] person is guilty of murder in the first degree when . . .

"[w]ith intent to cause the death of another person, he causes the death of such person or of a third person; and . . .

"as part of the same criminal transaction, the defendant, with intent to cause serious physical injury to or the death of an additional person or persons, causes the death of an additional person or persons; provided, however, the victim is not a participant in the criminal transaction . . .

"[and] [t]he defendant was more than eighteen years old at the time of the commission of the crime."

The actus reus of the offense is that a defendant intentionally murder one victim and cause the death of the other, with the intent of causing either death or serious physical injury to the second victim. As noted above, under *Laureano* the actus reus of a particular offense is what constitutes the "act or omission" for the purposes of section 70.25 (2) (*see* 87 NY2d at 643). Thus, we are bound to consider the entire actus reus of the offense with all its components when determining whether consecutive sentences are appropriate.

A "[c]onsecutive sentence is available 'if the Legislature has seen fit to provide that up to a particular point the acts of the defendant constitute one crime and that the acts of the defendant, committed thereafter, constitute a second crime and that each series of acts constitut[e] a separate crime' " (*People v Day*, 73 NY2d 208, 212 [1989], quoting *People v Snyder*, 241 NY 81, 83-84 [1925]). Here, by contrast, the same acts constitute both crimes. In other words, the same actus reus—the intentional murder of the same two victims—is the basis for both first degree murder convictions.

Defendant intentionally murdered Yurate Dainiene and caused the death of Rimgaudas Dainys—with the intent to cause Dainys' death or seriously physically injure him—in the same criminal transaction. Likewise, defendant intentionally murdered Rimgaudas Dainys and caused the death of Yurate Dainiene in the same criminal transaction with the requisite intent. Although the order is reversed in each count, as to which victim was primary and which was the aggravator, it is the same two murders that form the basis for each offense.[3] Thus, the People have failed to meet their burden of establishing the legality of consecutive sentences, since under the first prong of section 70.25 (2), consecutive sentences cannot be imposed where the actus reus is the same for both offenses. Stated differently, neither offense exists independently of the other as both offenses were committed through a single actus reus.

This case is distinguishable from the situation presented by *People v Brathwaite* (63 NY2d 839 [1984]), in which the defendant was sentenced to consecutive terms of 25 years to life for two counts of felony murder (murder in the second degree). The owner of a grocery store and an employee were shot and killed during the course of defendant's robbery of the store. We stated that

> "although the two deaths may be said to have occurred in the course of a single extended transaction—the robbery—it was separate 'acts' which caused the deaths . . . (i.e., there is no contention

---

**3.** Interestingly, if defendant had murdered at least one additional victim in the same transaction, consecutive sentences might be appropriate. For example, he could have been charged with the intentional murder of A with the accompanying murder of B, the intentional murder of B with the accompanying murder of C and the intentional murder of C with the accompanying murder of A. As so charged, none of the counts would have the same actus reus.

that it was the firing of the same shot that killed both the owner and the clerk), and neither was a material element of the other" (*Brathwaite*, 63 NY2d at 843).

Although the victims in this case were likewise killed by separate shots, section 125.27 (1) (a) (viii)—unlike felony murder—requires multiple victims to constitute a single offense and thus contemplates the possibility of multiple shots. The two separate shots that caused the deaths of the victims here were one actus reus for the purposes of this sentencing statute and consistent with our long-settled interpretation of Penal Law § 70.25 (2) (*see Laureano*, 87 NY2d at 643; *Ramirez*, 89 NY2d at 451; *Bryant*, 92 NY2d at 231).

The People argue and the dissent agrees that our analysis is inconsistent with the statutory definition of "act" in the Penal Law: "a bodily movement" (Penal Law § 15.00 [1]). They note that the crime of first degree murder in this case was accomplished by two bodily movements—two shootings, two offenses—and thus suggest that there could not have been a single "act" within the meaning of Penal Law § 70.25 (2). But the People misconceive the purpose of the statutory definition. It draws a line between a prohibited "act"—"a bodily movement," or actus reus—and a "[c]ulpable mental state" (Penal Law § 15.00 [6])—a state of mind, or mens rea. The statute could not have been designed to require courts to distinguish between one and several bodily movements, because the distinction will be difficult or impossible in many cases as the dissent recognizes.

Finally, the People point out an alleged anomaly in this interpretation of the statute—that defendant could have received consecutive sentences if he had been convicted of two counts of second degree murder for these crimes (Penal Law § 125.25 [1]), but is not eligible for consecutive sentences upon his conviction of two counts of first degree murder.[4] However, the Legislature has already provided enhanced punishment for crimes deemed serious enough to constitute murder in the first degree. Such crimes potentially warrant an amplified sentence of life imprisonment without parole (*see* Penal Law §§ 60.06, 70.00),

---

4. To adopt the approach proposed by the dissent would not prevent anomalous results. Under their theory there could be no consecutive sentencing if defendant killed both people with the same gunshot, and killing dozens or hundreds of victims with a single bomb would count as only "one act" for consecutive sentencing purposes, since in neither case could we say there were two distinct injurious acts.

and the People sought and received such a sentence. Given the superfluous nature of consecutive sentences in this instance, it seems unlikely that the Legislature contemplated the effect of the concurrent/consecutive sentencing scheme for this particular offense. We see no reason to interpret the statute as proposed by the People. We do not rewrite the statute but interpret it today consistent with our precedents.

Accordingly, the order of the Appellate Division should be affirmed.

GRAFFEO, J. (dissenting). Defendant was convicted of two counts of first-degree murder for breaking into the home of his former girlfriend and successively shooting her and her husband in the head as they slept. The majority concludes that defendant can receive only one sentence of imprisonment for the two murders because consecutive sentencing is impermissible under Penal Law § 70.25 (2). I respectfully dissent because I believe the sentencing court's imposition of a separate consecutive sentence for each homicide was lawful.

Penal Law § 70.25 (2) directs that consecutive sentencing is impermissible in only two circumstances: (1) when "two or more offenses [are] committed through a single act or omission" or (2) when "two or more offenses [are] committed . . . through an act or omission which in itself constituted one of the offenses and also was a material element of the other." Under the Penal Law, an "act" is "a bodily movement" and an "omission" is "a failure to perform an act as to which a duty of performance is imposed by law" (Penal Law § 15.00 [1], [3]).

When a defendant has been convicted of more than one offense, the sentencing court must review both the relevant Penal Law provisions and the particular facts proved at trial to identify whether any of the crimes are single act offenses. In this case, the inquiry begins with the first-degree multiple murder provision, which requires proof that,

> "[w]ith intent to cause the death of another person, *[defendant] cause[d] the death of such person . . .* and . . .

> "as part of the same criminal transaction, the defendant, with intent to cause serious physical injury to or the death of an additional person or persons, *cause[d] the death of an additional person or persons*" (Penal Law § 125.27 [1] [a] [viii] [emphasis added]).

Thus, the statute contemplates proof of at least two act elements: causing the death of one person and causing the death of an additional person. And, in the factual context presented here, the People could not have obtained either first-degree murder conviction without proving two homicidal acts—that defendant shot his former girlfriend and then did the same to her husband.

Based on a review of the elements of the offenses and the facts underlying these convictions, this case clearly does not fall within the first prong of Penal Law § 70.25 (2) because the two offenses at issue were not committed through a "single act or omission." The second prong of the statute is also not implicated because the two offenses were not committed "through *an* act or omission which *in itself* constituted one of the offenses" (*id.* [emphasis added]). Each shooting was a separate act and each offense required the People to prove both shootings, i.e., each count required proof of more than one act. There was no single act or omission which in itself constituted one of the offenses. Because defendant's criminal conduct does not fall within either scenario addressed in Penal Law § 70.25 (2), consecutive sentencing is not prohibited.[1]

The majority's conclusion to the contrary is inconsistent with our precedent, particularly *People v Laureano* (87 NY2d 640 [1996]), in which we have interpreted Penal Law § 70.25 (2) according to its plain language. In *Laureano*, defendant pleaded guilty to manslaughter and robbery arising from the robbery and death of a single victim. At the plea allocution, defendant admitted forcibly stealing property from the victim and causing him serious physical injury by slitting his throat, resulting in his death. The sentencing court imposed consecutive sentences but this Court concluded that concurrent sentences were required under Penal Law § 70.25 (2). Consecutive sentencing was prohibited in *Laureano* because manslaughter is a single act offense and the act the People relied on to support that count—slitting the victim's throat—was the same act that fulfilled the serious physical injury element of the first-degree robbery count. This single act, which "in itself" constituted one

---

1. As the Court explained in *People v Ramirez*, "[s]ection 70.25 (2) does not prohibit convictions of multiple offenses containing overlapping elements. Rather, the statute prohibits double punishment for *an act or omission* which violates more than one section of the law and is accordingly punishable in different ways" (89 NY2d 444, 451 n 5 [1996] [emphasis added]). Here, the People did not rely on a single act or omission to charge defendant with violating more than one section of the law.

of the offenses (manslaughter), underlay both counts, rendering consecutive sentencing impermissible.[2]

The facts in *Laureano* are significantly distinguishable from this case. *Laureano* involved a single homicidal act and a single victim; here, there were two homicidal acts and two victims. The single act in *Laureano*—cutting the victim's throat—in itself constituted one of the offenses: manslaughter. Here, no single act constituted one of the offenses; each offense by definition involved multiple acts. The fact that concurrent sentencing was required in *Laureano* does not compel the same result here.

Although the *Laureano* Court used the phrase "actus reus" to refer to the act underlying the manslaughter offense, it did not supplant the "single act or omission" language of Penal Law § 70.25 (2) by suggesting that other offenses that require proof of multiple acts would also trigger that subdivision. The "actus reus" nomenclature, while helpful in distinguishing between act-based elements (which are relevant to the concurrent sentencing inquiry) and mental state or "mens rea" elements (which are not), is not a substitute for applying the "single act" analysis prescribed by the Legislature. We did not hold in *Laureano*, or the other cases cited by the majority, that a multiple act offense can be transformed into a single act offense merely by grouping the act elements together and describing them as a single "actus reus." In *Laureano* we employed the "actus reus" analysis precisely because the manslaughter offense was predicated on a single act element, thereby triggering the sentencing statute. By substituting the phrase "actus reus" for the language the Legislature used (and defined) in the statute, the majority now turns every offense into a single act offense, regardless of the number of culpable act elements it includes.[3] In effect, this rewrites the statute so that it is now implicated

---

**2.** In *Laureano*, the Court indicated that if defendant had engaged in some other act that caused serious physical injury—e.g., if defendant had also beaten the victim—consecutive sentencing would have been permissible in that case (*see Laureano*, 87 NY2d at 644-645). Thus, even when there is only one victim, a defendant who engages in multiple injurious acts can be sentenced consecutively for offenses arising from those acts.

**3.** I do not dispute the majority's definition of "actus reus" as set forth in Black's Law Dictionary. But that phrase does not appear in Penal Law § 70.25 (2); rather, the Legislature used the word "act," a term it defined in the Penal Law. Notably, the Legislature's definition comports with the definition of "act" in Black's Law Dictionary, which quotes Model Penal Code § 1.13: " '[A]ct' or 'action' means a bodily movement whether voluntary or involuntary" (Black's Law Dictionary 26 [8th ed 2004]).

whenever any number of culpable acts—combined into one "*actus reus*"—result in multiple offenses.

The majority opines that the Legislature could not have intended courts to distinguish between one and several bodily movements.[4] Based on the language it chose, I believe the Legislature recognized that some crimes—such as the manslaughter offense in *Laureano*—require proof of only one "act" element (causing the death of the victim); others, such as the multiple murder offense at issue here, involve two (causing the death of victim A and causing the death of victim B) or more. It is therefore not difficult to identify the single act offenses that require scrutiny under Penal Law § 70.25 (2) (*see e.g. People v Bryant*, 92 NY2d 216 [1998] [criminal possession of a weapon]; *People v Ramirez*, 89 NY2d 444 [1996] [first-degree robbery]). But these first-degree multiple murders are in a different category. In this case, there were two distinct injurious acts giving rise to two murder charges relating to two victims. Consecutive sentencing should be permissible and I perceive no basis to disturb the sentence imposed by the sentencing court.

Granted, the impact of the effective reduction in sentence for this defendant is minimal because he received two consecutive sentences of life without parole; where life without parole is concerned, there is no practical difference between consecutive and concurrent sentences. But in cases where a defendant convicted of two or more counts of multiple murder did not receive the maximum sentence, the impact may be substantial.[5]

---

4. If the majority's point is that most crimes involve numerous bodily acts, I do not disagree. However, this does not present a problem because, for sentencing purposes, we need concern ourselves only with the particular act(s) that fulfill the act element(s) of the offense of which a defendant is charged. For example, to accomplish a second-degree intentional murder, a single act offense, a defendant necessarily engages in many bodily acts—but the only one the People must prove to support the conviction is the act that causes the victim's death.

5. The majority ruling will result in the elevation of form over substance in the indictment of first-degree multiple murder counts; semantic variations in pleading will now determine whether a defendant can be punished only once or can receive consecutive sentences in a case where more than two victims are killed through distinct homicidal acts. As I interpret the statute, consecutive sentencing for each victim is permissible regardless of whether all the victims are named in each multiple murder count but the same is not true under the majority's analysis. For example, in a case where defendant killed three victims, if all three are referenced in each count, concurrent sentencing will be required. But, as the majority acknowledges, consecutive sentencing will be permissible if the People name only two of the three victims in each

A defendant convicted of killing two people, who received two consecutive sentences of 25 years to life (one for each victim), will now serve 25 years to life rather than the 50 years to life deemed appropriate by the sentencing court. Ironically, consecutive sentencing will remain an option for a defendant who tried to kill two people but succeeded at killing only one; that defendant, convicted of one count of intentional murder and one count of attempted murder, will still be eligible for a 50 years to life sentence. Similarly, as the majority acknowledges, had defendant been convicted only of second-degree murder for each homicide, he could have served consecutive sentences for each of those counts under Penal Law § 70.25 (2) (*see People v Truesdell*, 70 NY2d 809 [1987]; *People v Brathwaite*, 63 NY2d 839 [1984]). Defendant having been convicted of the greater offenses, the majority nonetheless concludes concurrent sentencing is required.

The impact of the majority's ruling on future cases is equally troubling for it significantly curtails the discretion that had been available to sentencing courts. Before today, a court could choose from among a wide range of sentencing options in a case like this one. The court could impose the maximum: consecutive sentences of life without parole (the choice the sentencing court made in this case). Or the court could impose concurrent sentences of 20 or 25 years to life, since a court always has discretion to impose concurrent sentences, even when consecutive sentencing is permissible. And, in the middle range, the court could impose two consecutive sentences of 20 years to life, 25 years to life, or anything in between—meaning a young defendant deemed deserving of some form of leniency might obtain a parole-eligible sentence of 40 or 50 years to life, with the possibility of one day securing parole release.

By holding that consecutive sentencing is impermissible in the context of first-degree multiple murder, the majority has rendered the middle range of sentencing options illegal, leaving sentencing courts with an extreme and limited choice: either

count, thereby pleading three counts of first-degree multiple murder, each containing a different combination of victims. If pleaded in this manner, Penal Law § 70.25 (2) is not implicated, even under the majority's interpretation of the provision. As such, a defendant who kills three or more people will still be exposed to as many consecutive sentences as there are victims but a defendant who kills two people will be punished only once. I see no evidence that the Legislature intended such an anomalous result, nor do I believe the propriety of consecutive sentencing should vary depending on how the People choose to structure multiple murder counts in the indictment.

impose life without parole or issue a sentence that ensures that defendant will be eligible for parole, at the latest, in 25 years. Since there are scores of defendants convicted of two counts of second-degree murder or attempted murder who are currently serving sentences of 40 or 50 years to life, courts that might otherwise have chosen a comparable sentence for a defendant convicted of multiple murder may now be more inclined to impose life without parole in an effort to achieve some measure of consistency and parity in sentencing. Otherwise, a defendant convicted of first-degree offenses may obtain a significantly shorter sentence than a defendant convicted of second-degree offenses arising from similar homicidal acts. For this reason, I suspect that the result achieved by this defendant (who will not receive any meaningful benefit), will inure to the detriment of future defendants who might have received a lengthy but parole-eligible sentence instead of life without parole.

Nor can the decision to disregard the plain language of the statute be explained as an effort to give effect to legislative intent. No one (not even the majority) argues that the Legislature—which chose to make multiple murder a first-degree crime, putting it in the narrow class of murder "plus" offenses deemed deserving of the highest punishment—intended to preclude consecutive sentencing for this class of first-degree murderers, especially given that consecutive sentencing is permissible for second-degree murders responsible for precisely the same acts. For all of these reasons, because the consecutive sentencing regime imposed by the sentencing court was lawful, I would reverse the order of the Appellate Division.

Chief Judge Kaye and Judges Smith and Jones concur with Judge Ciparick; Judge Graffeo dissents in a separate opinion in which Judges Read and Pigott concur.

Order affirmed.