[942 NE2d 1019, 917 NYS2d 594]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ULYSESS MCKNIGHT, Appellant.

Argued November 15, 2010; decided December 14, 2010

## POINTS OF COUNSEL

*Legal Aid Society, Criminal Appeals Bureau*, New York City (*Allen Fallek* and *Steven Banks* of counsel), for appellant. I. Counsel's failure to object to the prosecutor's having disclosed in his opening the damaging expected testimony of two witnesses the prosecutor admittedly knew were unavailable, among other incomprehensible omissions, deprived defendant of his constitutional right to the effective assistance of counsel. (*People v Baldi*, 54 NY2d 137; *People v Benevento*, 91 NY2d 708; *People v Stultz*, 2 NY3d 277; *Strickland v Washington*, 466 US 668; *People v Turner*, 5 NY3d 476; *Rosario v Ercole*, 601 F3d 118; *People v Droz*, 39 NY2d 457; *Bruton v United States*, 391 US 123; *People v De Tore*, 34 NY2d 199; *People v Cruz*, 100 AD2d 882.) II. The sentences for the attempted murder and the simultaneously committed transferred intent murder had to run concurrently where the shots that constituted the attempt to kill one victim included the shots that killed the other victim and where the "separate and distinct acts" rationale for the imposition of consecutive sentences was inapplicable. (*People v Laureano*, 87 NY2d 640; *People v Parks*, 95 NY2d 811; *People v Rosas*, 8 NY3d 493; *United States v Pomranz*, 43 F3d 156; *People v Campbell*, 72 NY2d 602; *People v Naradzay*, 11 NY3d 460; *People v Dlugash*, 41 NY2d 725; *People v Ribowsky*, 77 NY2d 284; *People v Faulkner*, 36 AD3d 951; *People v Parton*, 26 AD3d 868.)

*Charles J. Hynes, District Attorney*, Brooklyn (*Keith Dolan* and *Leonard Joblove* of counsel), for respondent. I. Defendant received effective assistance of counsel. (*Strickland v*

*Washington,* 466 US 668; *People v Baldi,* 54 NY2d 137; *Bieren-baum v Graham,* 607 F3d 36; *Williams v Taylor,* 529 US 362; *People v Turner,* 5 NY3d 476; *People v Baker,* 14 NY3d 266; *People v Caban,* 5 NY3d 143; *Greiner v Wells,* 417 F3d 305, *cert denied sub nom. Wells v Ercole,* 546 US 1184; *People v Henry,* 95 NY2d 563; *Rosario v Ercole,* 601 F3d 118.) II. The imposition of consecutive sentences was lawful because separate and distinct acts underlay each of the two crimes, and the acts constituting each crime were not material elements of the other crime. (*People v Laureano,* 87 NY2d 640; *People v Azaz,* 10 NY3d 873; *People v Brown,* 80 NY2d 361; *People v Di Lapo,* 14 NY2d 170; *People v Ramirez,* 89 NY2d 444; *People v Rosas,* 8 NY3d 493; *People v Day,* 73 NY2d 208; *People v Brathwaite,* 63 NY2d 839; *People v Bonilla,* 57 AD3d 400; *People v Arroyo,* 93 NY2d 990.)

## OPINION OF THE COURT

READ, J.

On the evening of Friday, September 16, 2005, at the end of his workweek, William Smith played cards with Eric Lamotte, his friend of 15 years, and other friends and neighbors until the early morning hours of September 17, 2005. The card game took place out-of-doors, near the middle of Gates Avenue between Throop and Tompkins Avenues in Brooklyn, where Smith resided with his mother in a second-floor apartment. Lamotte was staying with the Smiths at the time. At about 4:30 A.M., a half hour or so after Smith and Lamotte broke away from the card game, they were standing in front of the building where Smith lived when an acquaintance, Maurice Lingard, joined them. Seeing two men round the corner and advance on the three of them with guns in hand, Lamotte urged Smith, "Let's move, let's go upstairs."

The two gunmen—Curtis Brown and defendant Ulysess Mc-Knight—fired what the police later determined to be a total of five 9 millimeter and five .45 caliber rounds in the direction of Lingard, the object of their rage. Lamotte fled upstairs to the roof of the building and escaped injury; Lingard, shot three times, followed close behind Lamotte and survived; but Smith, struck in the chest and left calf by bullets that lodged in his body, collapsed in the street and died in the hospital a few hours later.[1] Police officers arrived within minutes and spotted Brown and McKnight leaving the area. After a short pursuit, Brown

---

1. At McKnight's trial, the People's ballistics expert testified that he could not determine, within a reasonable degree of scientific certainty, the caliber of

was caught, while McKnight was not apprehended for several months. Neither of the guns used in the shooting was ever recovered.

McKnight was indicted and tried for various crimes as a result of this incident. A jury subsequently found him guilty of murder and attempted murder in the second degree (Penal Law § 125.25 [1]; § 110.00), based on allegations that, acting in concert with Brown,[2] he intended and engaged in conduct to cause Lingard's death, and he caused Smith's death. Supreme Court sentenced McKnight to 25 years to life for the murder, and 25 years to life for the attempted murder, subsequently reduced to 20 years plus five years of postrelease supervision; and ordered the sentences to run consecutively for an aggregate prison term of 45 years to life.

McKnight appealed, protesting that Penal Law § 70.25 (2) mandated concurrent sentences for his convictions for attempted murder and murder. The Appellate Division rejected this claim without discussion (72 AD3d 846, 847 [2d Dept 2010]), citing *People v Bonilla* (57 AD3d 400 [1st Dept 2008, Lippman, P.J., on the panel]) and *People v Brathwaite* (63 NY2d 839 [1984] [although defendant's two felony-murder convictions arose from a single transaction, an armed robbery, the separate acts of shooting each victim constituted the offenses and neither act was a material element of the other]).

In *Bonilla*, the defendant fired at least five shots during a neighborhood picnic on Labor Day in a New York City park, killing a 10-year-old girl standing near the intended victim, who survived. The defendant was convicted of both murder and attempted murder in the second degree, and the trial judge

---

either of the bullets that hit Smith because of their condition. He also testified that, based on his training and experience, the weight of the bullet that struck Smith in the chest was consistent with a 9 millimeter round, while the weight and "twists" of the bullet that struck him in the left calf were consistent with a .45 caliber round. The medical examiner who performed Smith's autopsy testified to a reasonable degree of scientific and medical certainty that the cause of his death was "gunshot wounds of the chest and leg with perforation of the lung and trachea."

2. Brown was tried jointly with McKnight, but before a separate jury. He was convicted of murder and attempted murder in the second degree and criminal possession of a weapon in the second degree (former Penal Law § 265.03 [2]), and sentenced to consecutive terms of imprisonment of 25 years to life for murder and 15 years for attempted murder, to run concurrently to a term of imprisonment of 10 years for weapon possession. The Appellate Division affirmed Brown's judgment of conviction (*People v Brown*, 60 AD3d 962 [2d Dept 2009], *lv denied* 12 NY3d 913 [2009]).

sentenced him to consecutive terms of 25 years to life imprisonment and 25 years, respectively, for an aggregate prison term of 50 years to life. The defendant—like McKnight—argued that the shot that caused the death was part of a multiple-shot actus reus underlying attempted murder and, as a result, he was not eligible to be sentenced consecutively for attempted murder and transferred-intent murder.

The Appellate Division disagreed on the ground that the shot that killed the child and the shots that wounded the intended victim were "separate and distinct acts" even though "defendant's intent with respect to each act was to kill the surviving victim" (*id.* at 401). The court added that "[n]othing in the [trial judge's] instructions on transferred intent required concurrent sentences" (*id.* at 401-402).[3] The Appellate Division concluded likewise in this case. A Judge of this Court granted McKnight leave to appeal (15 NY3d 753 [2010]), and we now affirm.

Section 70.25 of the Penal Law sets out the rules governing when a judge may or must impose a sentence of imprisonment concurrently or consecutively to another sentence imposed at the same time. As a general rule, a judge is authorized to direct that multiple sentences "shall run either concurrently or consecutively with respect to each other" (Penal Law § 70.25 [1]), except that

> "[w]hen more than one sentence of imprisonment is imposed on a person for two or more offenses committed through a single act or omission, or through an act or omission which in itself constituted one of the offenses and also was a material element of the other, the sentences . . . must run concurrently" (Penal Law § 70.25 [2]).

"Thus, sentences imposed for two or more offenses may not run consecutively: (1) where a single act constitutes two offenses, or (2) where a single act constitutes one of the offenses and a material element of the other" (*People v Laureano*, 87 NY2d 640, 643 [1996]).

---

**3.** According to Bonilla's attorneys, the trial judge included the standard "transferred intent" paragraph in his second-degree murder charge, instructing that "it is not required that the person who actually dies be the same person whose death was intended to be caused." In this case, the trial judge tracked the CJI verbatim, telling the jury that "[u]nder our law it is not required that the person who dies be the same person whose death was intended to be caused" (*see* CJI2d[NY] Penal Law § 125.25 [1]).

In deciding whether section 70.25 (2) mandates concurrent sentences, "the sentencing court must first examine the statutory definitions of the crimes for which defendant has been convicted" (*id.*). Based on the statutory definitions, the judge must then focus on the "act or omission"—i.e., the actus reus— that makes up each crime. The Penal Law defines an "act" as a "bodily movement" (Penal Law § 15.00 [1]), which we have interpreted to mean the actus reus or "wrongful deed that comprises the physical components of a crime and that generally must be coupled with *mens rea* to establish criminal liability" (*People v Rosas*, 8 NY3d 493, 496 n 2 [2007] [citation omitted]; *see also Laureano*, 87 NY2d at 643).

If the act or omission is the same for both offenses (under the first prong of section 70.25 [2]), or if the act or omission that constitutes one offense is a material element of another offense (under the second prong of section 70.25 [2]), then consecutive sentences may not be imposed. Conversely, a judge possesses discretionary consecutive sentencing authority if neither circumstance exists. And even "[i]f the statutory elements *do overlap* under either prong of [section 70.25 (2)], the People may yet establish the legality of consecutive sentencing by showing that the 'acts or omissions' committed by defendant were separate and distinct acts" (*Laureano*, 87 NY2d at 643 [emphasis added]; *see also People v Azaz*, 10 NY3d 873, 875 [2008] [" '(T)rial courts retain consecutive sentence discretion when separate offenses are committed through separate acts, though they are part of a single transaction' " (quoting *People v Brown*, 80 NY2d 361, 364 [1992])]; *People v Ramirez*, 89 NY2d 444, 451 [1996] ["(C)onsecutive sentences may be imposed when either the elements of the crimes do not overlap(,) or if the facts demonstrate that the defendant's acts underlying the crimes are separate and distinct"]).

As relevant here, a person is guilty of murder in the second degree when, "[w]ith intent to cause the death of another person, he causes the death of such person or of a third person" (Penal Law § 125.25 [1]). A person is guilty of attempted murder in the second degree when "with intent to commit" that crime "he engages in conduct which tends to effect the commission of such crime" (Penal Law §§ 110.00, 125.25 [1]). The actus reus of the murder of Smith was the firing of the two shots that "cause[d] the death of . . . a third person [i.e., Smith]"; and the actus reus of the attempted murder of Lingard was the firing of the eight other shots, which either hit no one or hit Lingard

and "tend[ed] to effect" his death. All 10 shots were discharged with the intent to cause Lingard's death, but " '[t]he test is not whether the criminal intent is one and the same and inspiring the whole transaction, but whether separate acts have been committed with the requisite criminal intent' " (*People v Frazier*, 16 NY3d 36, 41 [2010] [decided today], quoting *People v Day*, 73 NY2d 208, 212 [1989]). Thus, the actus reus of Smith's murder is not the same as the actus reus underlying Lingard's attempted murder under the first prong; and, under the second prong, the actus reus of Smith's murder is not a material element of the actus reus of Lingard's attempted murder because more than the two shots that struck Smith were fired at Lingard. If it were otherwise—if the two shots that hit Smith were the only shots fired at Lingard—we would agree that concurrent sentencing was mandated (*see e.g. People v Battles*, 16 NY3d 54, 59 [2010] [decided today] [consecutive terms of imprisonment were permissible for crimes committed against three victims who were individually doused with gasoline by defendant, but sentence imposed with respect to fourth victim, who was sprayed as a result of dousing of others, must run concurrently]).

McKnight argues that "the *actus reus* of each offense was the same [because] . . . by relying on the transferred intent theory, the People implicitly conceded that all [10] shots were fired with the intent to kill Lingard." Further, "based on the court's charge, the prosecutor's summation, and the absence of other evidence of [McKnight's] intent, the jury likely concluded that the attempt was founded on all the fired shots," citing *People v Parks* (95 NY2d 811, 814-815 [2000]). Thus, he reasons, "[t]he shots that killed Smith . . . were part of the *actus reus* of the attempt." But even assuming that McKnight is correct and the actus rei for the two crimes overlapped, the People clearly established through the testimony of the ballistics expert and the medical examiner that two shots struck and killed Smith. These shots were the result of "separate and distinct acts" of pulling a trigger to discharge a firearm (*see Laureano*, 87 NY2d at 643). There is no authority to support the notion that where an actus reus consists of repetitive discrete acts, such as successive shots, that these acts somehow merge such that they lose their individual character where the same criminal intent (here, the intent to kill Lingard) "inspir[es] the whole transaction" (*see Frazier*, 16 NY3d at 41).

And this is not a case like *Parks*, which stands for the proposition that when more than one felony could be the predicate of a felony murder conviction, the jury's verdict must establish which felony, in fact, serves as the predicate because otherwise it would be "impossible to tell which [felony] is a separate and distinct act from the felony murder" so as to justify consecutive sentencing (95 NY2d at 815). There is no question here that the jury convicted McKnight of murder because of the two shots that hit Smith. Further, this case is also distinguishable from *Rosas*, where the statute itself defined the actus reus for the crime to encompass the death of two people.

Finally, the dissent likens the circumstances here to our case law on possessory offenses (dissenting op at 52-53). But possession with criminal intent is complete once the defendant has dominion and control of a weapon; there are no more acts he can take to advance that offense. Attempt, at least on these facts, is a continuing series of bodily movements or acts: each individual shot was sufficient in and of itself to constitute the attempted murder of Lingard, and defendant could (and did) take more and more shots to carry out that crime. Further, the dissent complains that "[e]ven though several shots were fired, defendant was charged with one count of attempted murder— not separate attempts for each individual shot. Rather, all 10 shots were treated as a single, unified attempt" (dissenting op at 52-53). But section 70.25 deals with sentencing, not charging. The trial judge's sentencing authority is not constrained by the People's decision to aggregate bodily movements for purposes of charging.

Essentially, the dissent would have us create a special rule of sentencing to govern attempt, or at least every case where an attempted murder carried out by multiple acts results in the death of someone other than the intended victim. The First Department in *Bonilla* and the Second Department in this case declined entreaties to place such a gloss on the statute. We likewise see no reason to interpret section 70.25 (2) to limit the trial judge's sentencing discretion in this fashion.

We have considered defendant's remaining contentions and consider them to be without merit. Accordingly, the order of the Appellate Division should be affirmed.

Chief Judge LIPPMAN (dissenting in part). In this case, the actus reus of the attempted murder encompasses the entire actus reus of the murder. Since the two offenses were committed

through the same act within the meaning of Penal Law § 70.25 (2), concurrent sentences are required. Therefore, we respectfully dissent from the portion of the order affirming the imposition of consecutive sentences.

Defendant and codefendant each fired five shots in an attempt to murder Maurice Lingard. William Smith, an innocent bystander, was killed in the process and his murder was prosecuted on a theory of transferred intent—that bullets intended for Lingard actually struck and killed Smith. Under these circumstances, the two shots that caused Smith's death were inseparable from the 10 shots constituting the attempt on Lingard's life.

We do not minimize the seriousness of defendant's conduct, which resulted in the death of Smith. However, the doctrine of transferred intent has effectively served to allow the State to impose a term of 25 years to life on defendant. We are here confronted with the different issue of the legality of a sentence consecutive to the life term.

Under the Penal Law, concurrent sentences are mandatory when two offenses are committed through a single act, or through an act which constitutes one offense and is also a material element of the second (see Penal Law § 70.25 [2]). The Penal Law further defines an "act" as "a bodily movement" (Penal Law § 15.00 [1]), which we have interpreted to mean the actus reus of the offense (see People v Laureano, 87 NY2d 640, 643 [1996]). As we have held, a single "act" within the meaning of section 70.25 (2) can be perpetrated by multiple bodily movements (see People v Rosas, 8 NY3d 493, 499 [2007]).

Where the statutory elements of the offenses overlap, consecutive sentences can still be imposed if the "offenses are committed through separate and distinct acts, though they are part of a single transaction" (People v Ramirez, 89 NY2d 444, 451 [1996]; see also People v Frazier, 16 NY3d 36 [2010] [decided today]). In other words, "consecutive sentences may be imposed when either the elements of the crimes do not overlap or if the facts demonstrate that the defendant's acts underlying the crimes are separate and distinct" (Ramirez, 89 NY2d at 451). The burden of establishing that consecutive sentences are available is on the People (see People v Taveras, 12 NY3d 21, 25 [2009]).

There is more than mere overlap between these two offenses, as depicted by the majority; there is an element of identity.

Even though several shots were fired, defendant was charged with one count of attempted murder—not separate attempts for each individual shot. Rather, all 10 shots were treated as a single, unified attempt. And it is plain that they were correctly so treated. The majority suggests that this was merely a decision made by the People "for purposes of charging" (majority op at 50), but the implication that the People could have chosen otherwise—that defendant could have been charged with and convicted of 10 attempts, and given 10 consecutive sentences as a result—seems self-evidently wrong. There was only one attempt, and the actus reus of that attempt consisted of every shot fired in the effort to take Lingard's life, including the two shots that struck Smith. Stated differently, no shot was fired that was not part of the attempted murder of Lingard.

To reach the conclusion that consecutive sentences are permissible here, the majority finds that the actus reus of the murder is separable from the acts, or bodily movements, that constituted the attempted murder. To that end, the majority asserts that the two shots that killed Smith "were the result of 'separate and distinct acts' of pulling a trigger to discharge a firearm" (majority op at 49, quoting *Laureano*, 87 NY2d at 643). But the majority's separation of the shots—or the trigger-pulling acts—into groups of eight and two is arbitrary. The majority analyzes the case as if defendant had been convicted of the assault, rather than the attempted murder, of Lingard. Were that the case, it might be true that the actus reus of the assault against Lingard could be limited to the specific shots that hit the victim (*see People v Brathwaite*, 63 NY2d 839, 843 [1984]). Since assault is a crime defined by a result, there would be a basis for treating the acts that produced that result as a separate actus reus. But the crime of attempt is not defined by a result, and in such a case a series of bodily movements, accompanied by a single continuous intent, is one actus reus only. With regard to the actual convictions of murder and attempted murder, there were not separate actus rei, even though each offense consisted of several distinct bodily movements. Further, there is no indication that the attempt on Lingard's life came to an end before Smith was shot. Thus, the People have not met their burden of establishing that the convictions were based on separate and distinct acts (*see Ramirez*, 89 NY2d at 453).

Our case law on possessory offenses is instructive. In *People v Salcedo* (92 NY2d 1019, 1022 [1998]), we determined that the crime of criminal possession of a weapon in the second degree was "complete" once the defendant possessed a loaded gun

intending to use it unlawfully against another. We observed that a " 'subsequently formed intent while possessing the weapon result[s] in the commission of a second offense' " (*Salcedo*, 92 NY2d at 1022, quoting *People v Okafore*, 72 NY2d 81, 83 [1988]). Similarly, we explained in *Okafore* that second-degree weapon possession "spans only the period during which defendant possesses the weapon and harbors the unlawful intent to use it against another" and, "[i]f either element lapses, the crime is complete" (72 NY2d at 87). Under the circumstances presented here, however, the actus reus of the attempted murder was continuous in nature, such that it can only be concluded that the offense was complete when the last shot was fired. Defendant intended to kill only one individual and the acts he committed in furtherance of that intent were all committed for the purpose of attaining that end. Although two of the bullets struck and killed Smith, that does not alter the fact that they were fired as part of an attempt to kill Lingard.

Finally, despite the similarities this case bears to *People v Battles* (16 NY3d 54 [2010] [decided today]), the majority here reaches a different result. In *Battles*, we found a concurrent sentence appropriate where one of the victims was sprayed with gasoline while the others were being doused individually. We held that "the risk-creating conduct [the actus reus of depraved indifference assault] . . . was the same act as that of the others and running his sentence concurrently is required" (16 NY3d at 59). Here, the shots that hit Smith were part of the attempted murder of Lingard, and concurrent sentences must also be imposed. The disparate result reached by the majority here can only cause analytic confusion amongst bench and bar.

JONES, J. (dissenting in part). I agree with Chief Judge Lippman that the two offenses were committed through the same act and that concurrent sentences must be imposed. I do not join Chief Judge Lippman's discussion of *People v Battles* (16 NY3d 54 [2010] [decided today]).

Judges CIPARICK, GRAFFEO and PIGOTT concur with Judge READ; Chief Judge LIPPMAN dissents in part in a separate opinion in which Judge SMITH concurs; Judge JONES dissents in part in another opinion.

Order affirmed.