Fahey, J.
(dissenting in part and concurring in part). In deciding the first appeal, the majority creates a new rule that will result in an irrational parsing of the actions of defendants. *381 The result will be sentences grossly disproportionate to the crimes of which defendants are convicted. Furthermore, the majority has misinterpreted our precedent regarding the legality of consecutive sentencing. Inasmuch as defendant neither committed a separate act of force nor made a separate threat of force against the victim of the completed robbery to effectuate the taking of her purse, defendant’s sentence for the completed robbery was required to run concurrently with the sentences imposed on the attempted robberies. I respectfully dissent in the first appeal.
With respect to the second appeal, the sentence imposed upon defendant’s conviction of count one, charging him with attempted first-degree felony murder, was required to run concurrently with the sentence imposed on the underlying felony. I write separately because the majority fails to definitively resolve that issue. I nevertheless agree with the majority that because the People could have corrected their failure to specify the underlying felony during a retrial on count one, vacatur of defendant’s Alford plea is not required. I therefore concur in the result on the second appeal.
Penal Law § 70.25 (2) provides:
“When more than one sentence of imprisonment is imposed on a person for two or more offenses committed through a single act or omission, or through an act or omission which in itself constituted one of the offenses and also was a material element of the other, the sentences . . . must run concurrently.”
Under section 70.25 (2), “sentences imposed for two or more offenses may not run consecutively: (1) where a single act constitutes two offenses, or (2) where a single act constitutes one of the offenses and a material element of the other” (People v Laureano, 87 NY2d 640, 643 [1996]).
In Laureano, this Court set.forth a two-part test for determining whether consecutive sentences are legally permissible under Penal Law § 70.25 (2). In the first step, the sentencing court must “examine the statutory definitions of the crimes for which defendant has been convicted” (Laureano, 87 NY2d at 643). In doing so, the sentencing court “must determine whether the actus reus element is, by definition, the same for both offenses (under the first prong of the statute), or if the actus reus for one offense is, by definition, a material element of the second offense (under the second prong)” {id.). If the statutory elements do not overlap, “then the People have satis *382 fied their obligation of showing that concurrent sentences are not required” (id.). If, however, the “statutory elements do overlap under either prong of the statute,” then the sentences must run concurrently, unless, under the second step of the analysis, the People “establish the legality of consecutive sentencing by showing that the ‘acts or omissions’ committed by defendant were separate and distinct acts” (id.).
At all stages of the analysis, the People bear the burden of establishing the legality of consecutive sentencing (see id.; see also People v Rodriguez, 25 NY3d 238, 244 [2015]). The sentencing court may exercise its discretion to determine whether to impose a consecutive sentence only if the People have met their burden to demonstrate that consecutive sentences are legally authorized under the Penal Law (see Rodriguez, 25 NY3d at 244), which is a question of law.
L
With respect to the first appeal, I disagree with the majority that it was legally permissible for the sentence imposed on count two, charging defendant with robbery in the first degree, to run consecutively to the sentences imposed on counts five through seven, charging defendant with three counts of attempted robbery in the first degree.
Here, the completed robbery and the attempted robberies were charged pursuant to Penal Law § 160.15 (4), which provides that a person commits robbery in the first degree when “he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . [d]isplays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm.” As the People correctly concede, and the majority acknowledges (see majority op at 376), under the first prong of the Laureano analysis, the statutory elements of attempted robbery in the first degree and robbery in the first degree obviously overlap. Thus, the People were required to demonstrate the legality of consecutive sentences “by ‘identifying the facts which support their view’ that the crimes were committed by separate acts” (Rodriguez, 25 NY3d at 244, quoting Laureano, 87 NY2d at 644).
The majority concludes that the People have met that burden because defendant committed a separate and distinct act by taking the robbery victim’s purse (see majority op at 376, 377). In the majority’s view, People v Ramirez (89 NY2d 444 [1996]) *383 supports that determination. I disagree. Ramirez requires the conclusion that the mere taking of property completed through the display of a firearm—the relevant actus reus—without a separate act of force or threat of force used to accomplish the taking, does not authorize consecutive sentences on the robbery and attempted robbery charges.
In Ramirez, armed gunmen surrounded a vehicle being used to transport payroll bags and ordered the two guards making the delivery to the ground. One of the guards, Donahue, complied, but the other guard, Bailey, was shot several times when he attempted to move. The gunmen removed Donahue’s firearm from his waistband, and Donahue “heard rummaging around in the vehicle where he had left the payroll bags belonging to the Money Center” (id. at 448-449). Ultimately, Donahue’s gun, Bailey’s gun, and the cash were all stolen (see id. at 449). The defendant was charged with nine counts of robbery in the first degree: three counts relating to the theft of Donahue’s gun, three counts relating to the theft of Bailey’s gun, and three counts relating to the theft of the Money Center’s property (see id. at 449 and n 2).
This Court held that the sentences imposed on the counts relating to the theft of Bailey’s gun could run consecutively to the sentences imposed on the counts relating to the thefts from Donahue and the Money Center because “the violent and repeated shooting of Bailey was a separate and distinct act which was not a material element of the forcible theft of Donahue’s gun and the payroll bags” (id. at 454). Rather, the forcible theft of Donahue’s gun and the payroll bags was accomplished through the display of a firearm alone. The Court further held, however, that the sentences imposed on the counts relating to the theft of Donahue’s weapon and the theft of the Money Center’s payroll bags had to run concurrently. The Court reasoned that the fact “that defendant was armed and displayed an obvious and actual firearm before Donahue was a necessary element of the robbery of the payroll belonging to the Money Center,” and that the crimes were not separate and distinct because “[d] espite the fact that the stolen property belonged to two different victims, it is the acts of the defendant that control” (id. at 453 [emphasis added]). In other words, the actus reus of the counts pertaining to the robberies of Donahue and the Money Center “was merely a single inseparable act violative of more than one statute which thereby warrants a single punishment” (id. [internal quotation marks and emphasis omitted]).
*384 Importantly, the Court required the sentences to run concurrently even though the property stolen was located in different places, and therefore required the defendant and/or his accomplices to engage in at least two different acts, or “bodily movement[s]” (see Laureano, 87 NY2d at 644, citing Penal Law § 15.00 [1]), to accomplish the theft of property. Donahue’s weapon was in his waistband when it was taken, and the payroll bags were in the vehicle (see Ramirez, 89 NY2d at 448-449). Thus, although the gunmen engaged in only one threat of force to accomplish those takings—the display of weapons and an order to get on the ground—the gunmen had to engage in separate “acts” or “bodily movements” to complete the robberies by taking Donahue’s gun from his waistband and by removing the payroll bags from the vehicle. The Court nevertheless required the sentences imposed on the counts relating to the theft of Donahue’s gun to run concurrently with the sentences imposed on the counts relating to the theft of the payroll bags from the Money Center (see id. at 453-454).
With this understanding of Ramirez, the People’s argument that a consecutive sentence was authorized for the completed robbery because defendant engaged in a separate act or “bodily movement” to take the purse does not withstand scrutiny. The victim of the completed robbery testified at trial that as she was complying with defendant’s demands to drop to the ground, she put her purse on the ground next to her. She further testified that defendant “kicked [her] purse over to his friend and told him to pick it up, which he did.” She did not testify that defendant accomplished the taking of her purse through any additional act or threat of force directed specifically at her. Under Laureano and Ramirez, then, the relevant actus reus was the same for both the completed robbery and the attempted robberies—the display of a firearm—and the taking of the purse was not a separate and distinct act authorizing consecutive sentences. Concurrent sentences were therefore required.
If the People were correct about the proper interpretation of Ramirez, consecutive sentences would have been permissible for the theft of Donahue’s gun and the theft of the payroll bags. The rule that can be distilled from Ramirez is that separate and distinct acts of force or threats of force against a particular victim may authorize consecutive sentences for robbery, but if a single act or threat of force is used to accomplish a robbery of multiple victims, the mere taking or asportation of property, even if accomplished through separate “bodily movements,” *385 does not allow for consecutive sentencing. The People do not argue that defendant’s act of kicking the purse to his accomplice was an act óf force or threat of force against the robbery victim herself, so the Court’s analysis in Ramirez regarding the counts pertaining to the robbery of Bailey is inapposite, inasmuch as a separate and distinct act of force was committed against Bailey (see Ramirez, 89 NY2d at 454). Here, defendant concedes that a consecutive sentence would have been authorized had he committed a separate act or threat of force against the robbery victim herself.
One might posit that our holding in Ramirez was a result of the fact that the Money Center was a company and not a human victim against which an act or threat of force could be directed. We stated in Ramirez, however, that “[d]espite the fact that the stolen property belonged to two different victims, it is the acts of the defendant that control” (id. at 453 [emphasis added]). We have consistently examined the actions of the defendant, and not the number of victims, even those of the human variety, in determining whether consecutive sentences were legally authorized. For example, in People v McKnight (16 NY3d 43 [2010]), we held that consecutive sentences were permissible for the shooting of two victims because the defendant and his accomplice fired multiple shots at the victims, but we noted that “[i]f it were otherwise—if the two shots that hit [the first victim] were the only shots fired at [the second victim]—we would agree that concurrent sentencing was mandated” (id. at 48-49). Similarly, in People v Battles (16 NY3d 54 [2010], cert denied 565 US 828 [2011]), we held that consecutive sentences were authorized where the defendant engaged in separate acts by pouring gasoline over three victims (see id. at 57, 59). With respect to a fourth victim, however, who “was never doused with gasoline, but rather, was sprayed as a result of the dousing of the others,” we held that a concurrent sentence was required {id. at 59).
Here, defendant accomplished both the completed robbery and the attempted robberies through an action directed toward the group as a whole—he waved the gun at the group collectively and threatened them collectively with death if they did not comply with his demands to get on the ground. Again, the taking of the purse did not involve a separate act or threat of force directed against the robbery victim herself, but rather the mere asportation of property, which, pursuant to our holding in Ramirez, does not authorize consecutive sentences under Penal *386 Law § 70.25 (2). The People did not meet their burden to demonstrate that defendant directed any act of force or threat of force at the robbery victim in particular.
In contrast, under the majority’s holding, even if a robbery of a group of people is accomplished through one singular act of force or threat of force, a consecutive sentence will be authorized for each instance where the defendant engages in a separate bodily movement to accomplish the taking of property. This holding is contrary to our decision in Ramirez.[1]
Whether the taking of the purse was a separate and distinct act is not a factual question for the trial court to resolve in its discretion. This Court has no power to resolve factual questions. Accordingly, if the issue whether the People have met their burden to demonstrate that the defendant committed the crimes through separate and distinct acts were a factual question, this Court would have no power to address it. Yet we have addressed it, many times (see e.g. Rodriguez, 25 NY3d at 244-245 [holding that the People demonstrated that the crimes at issue were committed by separate and distinct acts]; Ramirez, 89 NY2d at 452-454 [rejecting the People’s argument regarding separate and distinct acts with respect to certain counts, but holding that the People met their burden on that issue with respect to other counts]; Laureano, 87 NY2d at 644-645 [holding that the People failed to meet their burden to demonstrate that the crimes involved two separate and distinct acts]). These cases demonstrate that although the issue involves some factual analysis, we have treated the issue whether the People met their burden to demonstrate that the crimes were committed through separate and distinct acts as a legal question.Once the People have met their legal burden to establish that the crimes were committed through separate and distinct acts, then the sentencing court has the discretion to impose consecutive or concurrent sentences (see Rodriguez, 25 NY3d at 244). Here, the People did not meet that burden.
*387 I therefore would hold that the taking of the purse was not a separate and distinct act authorizing a consecutive sentence for the completed robbery. Defendant legally could be charged with four different counts of robbery or attempted robbery, one for each victim, but because defendant accomplished those robberies through the same act or threat of force, concurrent sentences were required under the Penal Law. I would modify the order of the Appellate Division by requiring that the sentence imposed on count two be served concurrently with the sentences imposed on counts five through seven.
II
With respect to the second appeal, the sentence imposed on count one, charging defendant with attempted felony murder in the first degree, was required to run concurrently with the sentence imposed on the underlying felony. I agree with the majority that, due to the possibility that the People could correct their failure to specify the underlying felony during a retrial on count one, defendant’s plea was rational and need not be vacated. I write separately, however, because in my view, the Court should definitively reject the People’s argument that the sentence imposed on the attempted first-degree felony murder charge could run consecutively to the sentence imposed on the underlying felony.
A.
I agree with the majority’s observation that this Court has not yet directly addressed whether a sentence imposed upon a conviction of murder in the first degree pursuant to Penal Law § 125.27 (1) (a) (vii), i.e., first-degree felony murder, must run concurrently with the sentence imposed on the underlying felony (see majority op at 378). New York courts have long held, however, that a sentence imposed upon a conviction of second-degree felony murder must run concurrently with the sentence imposed on the underlying felony (see e.g. People v Parks, 95 NY2d 811, 815 [2000]; People v Dennis, 91 AD3d 1277, 1280 [4th Dept 2012], lv denied 19 NY3d 995 [2012]; People v Faulkner, 36 AD3d 951, 953 [3d Dept 2007], lv denied 8 NY3d 922 [2007]; People v Leftenant, 22 AD3d 603, 605 [2d Dept 2005], lv denied 6 NY3d 755 [2005]; People v Slater, 268 AD2d 260, 260-261 [1st Dept 2000], lv denied 94 NY2d 925 [2000], lv denied upon reconsideration 95 NY2d 892 [2000]; People v Leo, 255 AD2d 458, 459 [2d Dept 1998], lv denied 93 NY2d 973 [1999]). The People do not contest this authority.
*388 Rather, the People argue that the same rule should not apply to first-degree felony murder. The People contend that, in contrast to second-degree felony murder, with respect to first-degree felony murder, “the ‘in furtherance’ element of the attempted murder is part of the mens rea rather than the actus reus,” and, as such, “the acts constituting robbery and attempted murder are separate even though the intents served by those separate acts are interrelated.”
The People’s argument is without merit. Both the second-degree felony murder statute and the first-degree felony murder statute require the homicide to be committed “in the course of and in furtherance of” the underlying felony or immediate flight therefrom (see Penal Law §§ 125.25 [3]; 125.27 [1] [a] [vii]).[2] To the extent the People’s argument is based on the mens rea of first-degree felony murder, which, unlike second-degree felony murder, requires the defendant to commit the murder intentionally (see Penal Law § 125.27 [1]), this Court has always held that it is the acts of the defendant, and not the intent with which he or she acted, that control for consecutive sentencing purposes (see McKnight, 16 NY3d at 49; People v Frazier, 16 NY3d 36, 41 [2010]; Laureano, 87 NY2d at 644).
To the extent that the People argue that first-degree felony murder is distinguishable from second-degree felony murder because first-degree felony murder requires both an underlying felony and an intentional killing committed by the defendant himself, that argument is refuted by the Court’s holding in People v Rosas (8 NY3d 493 [2007]). In Rosas, the defendant shot his former girlfriend and her husband to death (see id. at 495). Even though the victims were killed by separate shots, and the defendant therefore engaged in two separate actions to accomplish the killings, the Court held that concurrent sentences were required for each count of murder in the first degree because Penal Law § 125.27 (1) (a) (viii) “requires multiple victims to constitute a single offense and thus contemplates the possibility of multiple shots” (id. at 499). The Court reasoned that it must “consider the entire actus reus of the offense with all its components when determining whether consecutive sentences are appropriate” (id. at 497 [emphasis added]).
*389 Likewise, the first-degree felony murder statute requires both an intentional killing and an underlying felony to constitute a single offense, and therefore contemplates the possibility of multiple acts or “bodily movements” encompassed within a single offense (see Penal Law § 125.27 [1] [a] [vii]). Consequently, the fact that defendant here engaged in separate acts to accomplish the underlying felony and to shoot the male victim does not authorize consecutive sentencing, because the statute requires that the defendant commit both an intentional homicidal act and an underlying felony to be guilty of the offense.
If the People wanted to ensure the possibility of a consecutive sentence on the attempted murder count, the People could have charged defendant with attempted second-degree murder under Penal Law § 125.25 (1), which would not have required proof that defendant shot the victim during the course of and in furtherance of a robbery or attempted robbery. Then, however, the People would have been unable to request a sentence with a maximum term of life imprisonment (see generally Rosas, 8 NY3d at 499-500).
The majority acknowledges that at the time of defendant’s plea, there was case law from the Second and Third Departments holding that a sentence for first-degree felony murder must run concurrently with the sentence imposed on the underlying felony (see majority op at 378, citing People v Cherry, 46 AD3d 1234, 1238 [3d Dept 2007], lv denied 10 NY3d 839 [2008], People v Middleton, 32 AD3d 557, 557-558 [3d Dept 2006], and People v Alves, 288 AD2d 483, 484 [2d Dept 2001]). One could interpret the Fourth Department’s decision here as a holding that the sentence imposed on the attempted first-degree felony murder count could have run consecutively to the sentence imposed on the underlying felony (see People v Couser, 126 AD3d 1419, 1422 [4th Dept 2015]). The Court should reject the People’s arguments and conclusively hold that the sentence imposed on a first-degree felony murder charge must run concurrently with the sentence imposed on the underlying felony.[3]
*390 B.
The People failed to specify in the indictment or during trial which count of robbery or attempted robbery served as the underlying felony for the attempted murder count, and the court did not clarify that issue in its instructions to the jury. It is well settled that in that situation, the sentence imposed on the attempted first-degree felony murder count was required to run concurrently with all the sentences imposed on the robbery and attempted robbery counts (see Parks, 95 NY2d at 815).
Before retrial on count one, defendant pleaded guilty to attempted murder in the first degree as charged in the indictment, not to a lesser included offense. Although he also received the minimum sentence of 15 years’ to life imprisonment as part of the plea bargain, the possibility that he could receive the maximum sentence of 25 years to life if convicted on count one after retrial would have been of no consequence to defendant, who was already serving a determinate term of 48 years’ imprisonment, so long as the sentence on count one was concurrent. As I have explained, defendant would have been entitled to a concurrent sentence on count one by law even if he were convicted after trial. If not for the possibility that, during the retrial on count one, the People could have specified which robbery or attempted robbery was the underlying felony for the attempted felony murder charge, I would agree with defendant that vacatur of his plea is required.
As the majority notes, however, the People could have specified during a retrial on count one that the underlying felony for the attempted felony murder was count five, charging defendant with the attempted robbery of the shooting victim (see majority op at 380). I agree with the majority that the possibility that the People could have corrected that lack of specificity during a retrial on count one renders defendant’s decision to accept a plea bargain in which he received the minimum concurrent sentence knowing and rational. I therefore concur in the majority’s resolution of the second appeal.
*391 In People v Couser (Appeal No. 1): Order, insofar as appealed from, affirmed.
Opinion by Judge Abdus-Salaam. Chief Judge DiFiore and Judges Pigott and Garcia concur. Judge Fahey dissents in part in an opinion in which Judges Rivera and Stein concur, Judge Stein concurring in so much of the opinion as relates to the appeal herein.
In People v Couser (Appeal No. 2): Order affirmed.
Opinion by Judge Abdus-Salaam. Chief Judge DiFiore and Judges Pigott, Stein and Garcia concur, Judge Stein concurring in so much of the opinion as relates to the appeal herein. Judge Fahey concurs in result in a separate concurring opinion in which Judge Rivera concurs.

. Moreover, the majority’s holding could produce anomalous results. If, for example, a defendant approaches a group of five people, displays a firearm, and collectively directs them to throw their wallets toward him, the defendant’s separate acts of bending down to pick up each of the five wallets from the ground will permit five consecutive sentences for robbery under the majority’s analysis. The majority states that consecutive sentences may be legally authorized under that scenario, but that the sentencing court would have the discretion to impose either consecutive or concurrent sentences (see majority op at 377 n 4). In my view, however, Ramirez requires the conclusion that consecutive sentences would not be permissible in that scenario, and the sentencing court would be required by law to impose concurrent sentences.

. For this reason, the People’s reliance on People v Rodriguez, where consecutive sentences were permissible (25 NY3d 238, 245 [2015]), is unavailing.

. The majority concludes that it has no occasion to address the issue in part because defendant failed to raise the issue of the validity of his plea as it relates to his misunderstanding of his sentencing exposure until his reply brief (see majority op at 380). I respectfully disagree. In his main brief filed with this Court, as part of his contention that the record fails to demonstrate *390 that his guilty plea was knowing, voluntary, and intelligent, defendant argued that his misunderstanding of his sentencing exposure “casts substantial doubt on the voluntariness of the plea as it appears to undermine any reasonable motive [defendant] might have had for pleading guilty to a crime that he insisted he did not commit.” Defendant contended that it should be clear under the circumstances that a decision to plead guilty “would not be knowing and rational if there is no legal possibility of consecutive sentences.”