This opinion is uncorrected and subject to revision before
publication in the New York Reports.
--------------------------------------------------------------------

No. 166
The People &c.,
             Respondent,
        v.
Phillip Couser,
             Appellant.
(Appeal No. 1.)
------------------------
No. 167
The People &c.,
             Respondent,
        v.
Phillip Couser,
             Appellant.
(Appeal No. 2.)


For Each Case:

        James A. Hobbs, for appellant.
        Geoffrey Kaeuper, for respondent.




ABDUS-SALAAM, J.:

        In the first of these appeals we must consider whether

Penal Law § 70.25 (2) permits consecutive or concurrent

sentencing for defendant's convictions.  Specifically, we must

resolve whether defendant's convictions for attempted robbery and

robbery were properly ordered to run consecutively by the trial

- 1 -

court.  In the second appeal, we must consider whether defense counsel's advice to defendant, prior to taking an Alford plea to attempted murder, that his sentence after conviction for that crime could be directed to run consecutively to his other sentences rendered counsel's assistance ineffective. Additionally, we must determine whether defendant's Alford plea was knowing, intelligent, and voluntary.  We hold that defendant's consecutive sentences for robbery and attempted robbery, as modified by the Appellate Division, meet the requirements of Penal Law § 70.25 (2) as explained by this Court in People v Laureano (87 NY2d 640, 643 [1996]).  We also hold that defendant received effective assistance of counsel, and defendant's Alford plea was knowing, intelligent and voluntary.

I.

Defendant's convictions stem from his actions in a City of Rochester park on the evening of August 16, 2008.  Defendant, along with three others, approached a group of five individuals as they were walking to a vehicle.  Defendant pulled out a gun and told everyone to get on the ground or he would kill them. Defendant cocked the gun, placed it at the rear of one of the victims's head as that victim was lowering himself to the ground, and fired one shot.  The victim of the shooting survived, as the bullet only grazed the back of his head because he flinched when defendant fired the gun.  The purse of one of the other victims

was taken during the incident.  When defendant and his companions left, the police were called and the shooting victim was taken to the hospital.  The police recovered a handgun in nearby bushes and later verified that it was the gun used in the shooting. Following an unrelated search of defendant's home in November 2008 for suspected criminal possession of a weapon, defendant was interrogated by an officer who suspected defendant might have been involved in the park robbery a few months prior.  Defendant admitted to possessing a gun in the park on the date of the robbery and intending to rob the group.  He claimed that he did not intend to kill anyone.  Defendant was charged with one count of first-degree attempted murder (see Penal Law §§ 110.00, 125.27 [1] [a] [vii]), one count of first-degree robbery (see Penal Law § 160.15 [4]), two counts of second-degree criminal possession of a weapon (see Penal Law § 265.03 [1] [b], [3]), three counts of first-degree attempted robbery (see Penal Law §§ 110.00, 160.15 [4]), and third-degree criminal possession of a weapon (see Penal Law § 265.02 [1]).

During trial, four of the victims testified for the People.  Three of the four victims testified that they heard defendant cock the gun before pointing the gun at the shooting victim.  However, defendant, who testified on his own behalf, stated that he did not point the gun at anyone in particular and the gun accidentally discharged.  The jury was unable to reach a verdict on the first-degree attempted murder charge, but found

defendant guilty of the remaining charges.  Defendant consented to a mistrial as to the attempted murder and accepted a partial verdict.

Defendant was sentenced as follows: a determinate term of 18 years with 5 years of post-release supervision (PRS) for robbery; determinate terms of 15 years with 5 years of PRS for each count of criminal possession of a weapon in the second degree; determinate terms of 15, 10, and 5 years, with 5 years of PRS each, for the attempted robbery counts; and an indeterminate term of 2 to 6 years for criminal possession of a weapon in the third degree.  The court directed the sentences for the robbery and the two counts of criminal possession of a weapon in the second degree to run concurrently with each other but consecutively to the remaining sentences.  The court further directed that the sentence for each attempted robbery count was to run consecutively to all other sentences, and that the sentence for criminal possession of a weapon in the third degree was to run concurrently with all other sentences.  The aggregate sentence, therefore, was 48 years with 5 years of PRS.

Prior to retrying defendant on the first-degree attempted murder count, defense counsel requested an Alford plea to the minimum sentence available on that charge to run concurrent to defendant's other sentences.  Initially, the court refused to permit the plea, but thereafter allowed argument on the issue.  Defense counsel stated that defendant "would not be

able to give a colloquy indicating an intentional act on his

part," and thus an Alford plea was preferable.[1]  The People

explained that "[b]ased upon conversations after the trial the

best information that we have is that the vote in the jury was

eleven to one for conviction."  Defense counsel stated that

defendant

> "is serving a lengthy term as a result of the
> charges upon which he has been convicted and
> he sees based on our discussions that there
> is a strong likelihood that if we had a
> retrial that he would be convicted of the
> attempted murder charges, and he would not
> know what the sentence would be and whether
> it would be concurrent or consecutive.  The
> offer here had been for him to plead to the
> charge and receive the minimum sentence to
> run concurrent with the sentence he is
> serving.  And he has indicated to me that he
> wishes to make the voluntary choice to accept
> this opportunity to plead and receive this
> concurrent sentence."

Following a recitation of the facts underlying the attempted

murder charge by defense counsel and the People, and a recitation

of what the testimony would be upon retrial, the court asked

defendant "[i]s that correct?"  After defendant responded "yes,"

the court accepted the Alford plea, stating that the discussion

of the trial evidence and defendant's intention to take the plea

satisfied the requirements to which the court was legally

obligated to adhere.  The court asked defendant whether he was

aware of what was taking place and asked him if he wanted to say

---

[1]  An Alford plea permits a defendant to plead guilty to a crime while maintaining innocence (see North Carolina v Alford, 400 US 25 [1970]).

anything.  Defendant responded "No," and acknowledged that he was pleading guilty.  The court ordered the promised sentence of 15 years to life to run concurrently with the previously imposed sentences.  Defendant appealed separately from his convictions following the jury verdict and his conviction following the Alford plea.

On the first appeal, the Appellate Division modified the judgment of conviction by directing the sentences imposed on the counts of attempted robbery to run concurrently with each other and consecutively to the sentence imposed on the completed robbery, and otherwise affirmed (126 AD3d 1419 [4th Dept 2015]).  The court concluded that the actus reus of all the attempted robbery counts "was a single act constituting one offense, and thus the sentences on those counts must run concurrently with each other" (126 AD3d at 1421).[2]  The court took no issue with the sentencing on the remaining counts, noting that the trial court properly exercised its discretion in directing that the sentences for robbery and attempted robbery run consecutively.  In the second appeal, the Appellate Division affirmed, concluding that "a concurrent sentence was not required for the attempted murder count . . . because the shooting of the male victim was an act separate and distinct from the" robbery and attempted robbery counts (id. at 1422).  Accordingly, the court held that defense

_____

[2]  The People did not appeal the imposition of concurrent sentences for the three attempted robbery counts.

counsel was not ineffective for advising defendant that a sentence for attempted murder could run consecutively to his other sentences, and that defendant's plea in exchange for a concurrent minimum sentence was knowing, intelligent and voluntary.  We agree.

II.

In the first appeal, defendant argues that Penal Law § 70.25 (2) mandates concurrent sentencing under these facts because the statutory elements of the robbery and attempted robbery counts are, by definition, identical or overlapping, and defendant engaged in a single act to attempt and ultimately execute the robbery -- waving his gun.

Penal Law § 70.25 (2) provides: "When more than one sentence of imprisonment is imposed on a person for two or more offenses committed through a single act or omission, or through an act or omission which in itself constituted one of the offenses and also was a material element of the other, the sentences . . . must run concurrently."  We have interpreted that provision to require that "sentences imposed for two or more offenses may not run consecutively: (1) where a single act constitutes two offenses, or (2) where a single act constitutes one of the offenses and a material element of the other" (People v Laureano, 87 NY2d at 643; see People v Battles, 16 NY3d 54, 58 [2010]).

In People v Laureano, we explained that when "determining whether concurrent sentences are required, the sentencing court must first examine the statutory definitions of the crimes for which defendant has been convicted" (87 NY2d at 643).  The court must then determine "whether the actus reus element is, by definition, the same for both offenses (under the first prong of the statute), or if the actus reus for one offense is, by definition, a material element of the second offense (under the second prong)" (id.).  The court must focus on actus reus rather than mens rea "[b]ecause both prongs of Penal Law § 70.25 (2) refer to the 'act or omission' . . . that constitutes the offense" (id.).[3]

If a defendant's acts or omissions do not fit under either prong of the statute, "the People have satisfied their obligation of showing that concurrent sentences are not required" (id.).  When there "is some overlap of the elements of multiple statutory offenses," courts retain discretion to impose consecutive sentences "if the People can demonstrate that the acts or omissions committed by the defendant were separate and distinct acts" (People v Frazier, 16 NY3d 36, 40 [2010]), even "though they are part of a single transaction" (People v Brown, 80 NY2d 361, 364 [1992]).

---

[3]  The actus reus of the crime is "'[t]he wrongful deed that comprises the physical components of a crime'" (People v Rosas, 8 NY3d 493, 496 n 2 [2007], quoting Black's Law Dictionary 39 [8th ed 2004]).

Defendant was sentenced to consecutive terms of imprisonment for his convictions of attempted first-degree robbery and first-degree robbery. Penal Law § 160.15 (4) provides that a person commits robbery in the first degree if he or she "forcibly steals property and . . . in the commission of the crime or immediate flight therefrom, . . . [d]isplays what appears to be a pistol, revolver, . . . or other firearm . . ." While the elements of attempted first-degree robbery and first-degree robbery obviously overlap, here, the completed robbery included a separate and distinct act, giving the trial court discretion to run the sentences consecutively. The purse of one of the victims was taken during the incident. The trial evidence revealed that defendant kicked her purse to his companion, who took it before defendant fired the gun. That separate and distinct act involved the taking of one victim's purse. The taking of this victim's purse constituted a separate act against a single victim that was distinct from defendant's use of the gun in an attempt to rob the remaining victims. Although the taking of the purse occurred during a single criminal transaction, the People offered evidence that defendant waved the gun, which was a separate act from the taking of the purse, that evidence was sufficient for the trial court to impose consecutive sentences for the robbery and attempted robberies.

People v Ramirez (89 NY2d 444 [1996]) is instructive. There, a man displaying an automatic weapon ordered two security

guards, who were transporting money to a money center, to lie down on the ground.  One of the guards moved and was shot repeatedly.  Other robbers who were similarly armed stole the guns from both guards and money from inside their vehicle.  The defendant, one of the robbers, was charged with nine counts of robbery: three relating to the theft from the uninjured guard, three relating to the theft from the guard who was shot, and three relating to the theft of money.  We determined that the forcible taking from the uninjured guard was a material element of the robbery of the money from the vehicle, and therefore all of the sentences relating to those two thefts had to run concurrently.  We, however, permitted consecutive sentences for the counts relating to the theft from the guard who was shot. Although "the crimes were temporally close in a single criminal episode," the "entire tenor" of the robberies was "distinct" (id. at 454-455).  So too here, the robbery was a single criminal episode, but the taking of that victim's purse was a separate and distinct act from the attempted robberies achieved by waving the gun.  As the dissent concedes, once the People offer evidence of the existence of a separate and distinct act, the trial court has discretion to order consecutive sentences.  The People did so here.  Under these circumstances we cannot say the trial court abused its discretion by directing that the sentences for those

convictions run consecutively.[4]


                              III.

        In the second appeal, defendant takes issue with the
Alford plea he entered, contending that the plea must be vacated
because (1) he received ineffective assistance of counsel and (2)
his plea was not knowing, voluntary and intelligent.


A.  *Ineffective Assistance of Counsel*

        Defendant argues that the only reason he took the plea
was because his counsel advised him that he could receive an
additional consecutive sentence if he went to trial.  Defendant

---

        [4]  The dissent's hypothetical robbery involving a
perpetrator waving his gun while demanding that a group of five
victims throw their wallets toward him would not always require
consecutive sentences under this decision.  Rather, as the
hypothetical suggests, depending on the manner in which the
taking of the wallets is accomplished, there may or may not be
evidence that separate and distinct acts were committed to
effectuate the robbery so as to permit consecutive sentences.
Even where the evidence may permit consecutive sentences, the
trial court would still retain discretion to impose concurrent
terms.  The conclusion we make today is based on the facts of
this case and the discretion of the trial judge to direct
consecutive sentences based on the defendant's separate and
distinct acts.  Moreover, the dissent's prediction that this
decision will result in "sentences grossly disproportionate to
the crimes of which defendants are convicted" (dissenting opn, at
1) ignores Penal Law § 70.30 in which the legislature limited the
number of consecutive sentences that can be imposed on any
defendant by requiring the Department of  Corrections and
Community Supervision to cap the aggregate term according to the
statute (see e.g. People ex rel. Ryan v Cheverko, 22 NY3d 132
[2013]).

asserts that advice was incorrect, because, in his view, his conviction for attempted murder must run concurrently with his conviction for robbery as a matter of law. The first-degree murder statute provides that a person is guilty of that crime when "[w]ith intent to cause the death of another person, he causes the death of such person or of a third person; and . . . (vii) the victim was killed while the defendant was in the course of committing or attempting to commit and in furtherance of robbery" (Penal Law § 125.27 [1] [a] [vii]; see Penal Law § 110.00). Defendant argues that any sentence for attempted first degree murder that would be imposed upon him would have to run concurrently with his sentences for robbery and attempted robbery, because in order to be convicted of first degree murder under the aforementioned section, he would have had to commit an underlying enumerated felony, here the robbery.

We have not directly addressed whether the sentence on a first-degree felony murder charge must run concurrently with the sentence imposed on the underlying felony. At the time of defendant's sentencing, the Fourth Department had yet to address this issue, but the Second and Third Departments had, holding that a sentence for first-degree felony murder had to run concurrently with the sentence imposed on the underlying felony (see People v Cherry, 46 AD3d 1234, 1238 [3d Dept 2007], lv denied 10 NY3d 839 [2008]; People v Middleton, 32 AD3d 557, 557-558 [3d Dept 2006]; People v Alves, 288 AD2d 483, 484 [2d Dept

2001]).  However, when faced with the issue in this case, the
Fourth Department affirmed the sentencing court's conclusion that
the sentences could run consecutively.  Under these
circumstances, we cannot say that defense counsel's advice to
defendant, even if erroneous, rendered him ineffective (see e.g.
People v Modica, 64 NY2d 828, 829 [1985]).

B.  *Validity of the Alford Plea*

Defendant argues that his plea should be vacated
because it was not knowing, intelligent and voluntary.  He
contends that the sentencing court's failure to perform a factual
allocution is inexcusable, where the trial evidence demonstrated
that he lacked the intent required for attempted murder.

An Alford plea is permitted in New York only when "it
is the product of a voluntary and rational choice, and the record
before the court contains strong evidence of actual guilt"
(Matter of Silmon v Travis, 95 NY2d 470, 475 [2000]).  We have
held in this context that if a defendant's factual recitation
"negates an essential element of the crime, raising substantial
doubt as to guilt, the trial court must inquire further to ensure
that defendant's guilty plea is both knowing and voluntary"
(Matter of Silmon, 95 NY2d at 474 n 1 [emphasis added]).

The extensive factual recitation of the trial evidence
presented by both defense counsel and the People was sufficient
for the court to be satisfied that there was "strong evidence of

guilt," such that an Alford plea was appropriate under the
circumstances. Specifically, during the hearing the People
stated on the record that the trial evidence indicated defendant
was present in the park on the date at issue; he was armed with a
loaded handgun and displayed the handgun in the direction of his
victims; and he pointed the gun at the back of one of the
victims's head. Although defendant stated that the gun went off
accidentally, three of the four victims testified that they heard
defendant cock the gun before placing it at the back of the
shooting victim's head. Defendant's counsel agreed with the
People's recitation, and explained that defendant would not admit
guilt to first degree murder. The court noted that it understood
that defendant disputed whether he possessed the requisite
intent, consistent with his testimony at trial. The court then
asked defense counsel to ensure that defendant was in agreement
with taking the Alford plea. After speaking with defendant,
defense counsel stated on the record that defendant was ready to
proceed and that defendant did not dispute that his testimony
would be consistent with his trial testimony should the case be
retried. Defendant expressly acknowledged that counsel's
statement was correct. The court verified that defendant wished
to proceed, and the plea was accepted. Under these
circumstances, the trial record indicated strong evidence of
guilt and the court was not required to do more than it did to
ensure that defendant voluntarily entered the plea (see Matter of

Silmon, 95 NY2d 470).

Defendant further argues that his plea was not knowing, voluntary, and intelligent because the only reason he pled guilty to attempted murder was to ensure that he received a concurrent sentence.  The dissent concludes that similar to our felony murder jurisprudence, a conviction for intentional felony murder must run concurrently with a conviction for the underlying felony.  However, we have no occasion to address that argument as defendant first raised it in his reply brief.  But, even if we were to apply our sentencing rules for felony murder, defendant's argument must fail.  Under the facts of this case, concurrent sentencing was not required.

Here, in his attempt to rob one of the victims, defendant also shot that victim.  Accordingly, the attempt to rob that victim was sufficient to support defendant's conviction for first-degree attempted murder (see Penal Law § 125.27 [1] [a] [vii]).  Wholly separate from that act, however, was the taking of another victim's purse.  Although one criminal transaction occurred, those two separate and distinct acts -- the shooting and the taking of the purse -- perpetrated against two separate victims allowed the court to run the sentence for attempted first-degree murder consecutively to the robbery (see Brown, 80 NY2d 361; People v Lemon, 38 AD3d 1298, 1299 [2007]).

Defendant points out that the People's failure to specify in the indictment or at any time prior to the court

instructing the jury which crime formed the basis for the first-degree attempted murder charge, requires concurrent sentencing (see People v Parks, 95 NY2d 811, 815 [2000] ["Under (such) circumstances, it is impossible to tell which robbery is a separate and distinct act from the felony murder"]).  If we were to apply our felony murder sentencing rules here, the Parks issue would not be fatal.  At the time the Alford plea was requested by defendant, the People were facing a retrial, during which the People could have resolved the Parks issue by identifying the attempted robbery of the shooting victim as the basis of the first-degree attempted murder count.  Consequently, if defendant were convicted of attempted murder after retrial, that sentence could run consecutively to his sentence for robbery.  Defendant therefore received the benefit he apparently sought by taking the plea -- a concurrent minimum sentence.

V.

Accordingly, on the first appeal the Appellate Division order, insofar as appealed from, should be affirmed.  On the second appeal, the Appellate Division order should be affirmed.

People v Phillip Couser

Nos. 166-167

FAHEY, J. (dissenting in part and concurring in part):

In deciding the first appeal, the majority creates a new rule that will result in an irrational parsing of the actions of defendants. The result will be sentences grossly disproportionate to the crimes of which defendants are convicted. Furthermore, the majority has misinterpreted our precedent regarding the legality of consecutive sentencing. Inasmuch as defendant neither committed a separate act of force nor made a separate threat of force against the victim of the completed robbery to effectuate the taking of her purse, defendant's sentence for the completed robbery was required to run concurrently with the sentences imposed on the attempted robberies. I respectfully dissent in the first appeal.

With respect to the second appeal, the sentence imposed upon defendant's conviction of count one, charging him with attempted first-degree felony murder, was required to run concurrently with the sentence imposed on the underlying felony. I write separately because the majority fails to definitively resolve that issue. I nevertheless agree with the majority that because the People could have corrected their failure to specify the underlying felony during a retrial on count one, vacatur of

defendant's Alford plea is not required.  I therefore concur in
the result on the second appeal.

Penal Law § 70.25 (2) provides:

"When more than one sentence of imprisonment
is imposed on a person for two or more
offenses committed through a single act or
omission, or through an act or omission which
in itself constituted one of the offenses and
also was a material element of the other, the
sentences . . . must run concurrently."

Under section 70.25 (2), "sentences imposed for two or more
offenses may not run consecutively: (1) where a single act
constitutes two offenses, or (2) where a single act constitutes
one of the offenses and a material element of the other" (People
v Laureano, 87 NY2d 640, 643 [1996]).

In Laureano, this Court set forth a two-part test for
determining whether consecutive sentences are legally permissible
under Penal Law § 70.25 (2).  In the first step, the sentencing
court must "examine the statutory definitions of the crimes for
which defendant has been convicted" (Laureano, 87 NY2d at 643).
In doing so, the sentencing court "must determine whether the
*actus reus* element is, by definition, the same for both offenses
(under the first prong of the statute), or if the *actus reus* for
one offense is, by definition, a material element of the second
offense (under the second prong)" (id.).  If the statutory
elements do not overlap, "then the People have satisfied their
obligation of showing that concurrent sentences are not required"
(id.).  If, however, the "statutory elements do overlap under

either prong of the statute," then the sentences must run concurrently, unless, under the second step of the analysis, the People "establish the legality of consecutive sentencing by showing that the 'acts or omissions' committed by defendant were separate and distinct acts" (id.).

At all stages of the analysis, the People bear the burden of establishing the legality of consecutive sentencing (see id.; see also People v Rodriguez, 25 NY3d 238, 244 [2015]). The sentencing court may exercise its discretion to determine whether to impose a consecutive sentence only if the People have met their burden to demonstrate that consecutive sentences are legally authorized under the Penal Law (see Rodriguez, 25 NY3d at 244), which is a question of law.

I.

With respect to the first appeal, I disagree with the majority that it was legally permissible for the sentence imposed on count two, charging defendant with robbery in the first degree, to run consecutively to the sentences imposed on counts five through seven, charging defendant with three counts of attempted robbery in the first degree.

Here, the completed robbery and the attempted robberies were charged pursuant to Penal Law § 160.15 (4), which provides that a person commits robbery in the first degree when "he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or

another participant in the crime . . . [d]isplays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm."  As the People correctly concede, and the majority acknowledges (see majority op at 9), under the first prong of the Laureano analysis, the statutory elements of attempted robbery in the first degree and robbery in the first degree obviously overlap.  Thus, the People were required to demonstrate the legality of consecutive sentences "by 'identifying the facts which support their view' that the crimes were committed by separate acts" (Rodriguez, 25 NY3d at 244, quoting Laureano, 87 NY2d at 644).

The majority concludes that the People have met that burden because defendant committed a separate and distinct act by taking the robbery victim's purse (see majority op at 9-10).  In the majority's view, People v Ramirez (89 NY2d 444 [1996]) supports that determination.  I disagree.  Ramirez requires the conclusion that the mere taking of property completed through the display of a firearm -- the relevant actus reus -- without a separate act of force or threat of force used to accomplish the taking, does not authorize consecutive sentences on the robbery and attempted robbery charges.

In Ramirez, armed gunmen surrounded a vehicle being used to transport payroll bags and ordered the two guards making the delivery to the ground.  One of the guards, Donahue, complied, but the other guard, Bailey, was shot several times

when he attempted to move.  The gunmen removed Donahue's firearm from his waistband, and Donahue "heard rummaging around in the vehicle where he had left the payroll bags belonging to the Money Center" (id. at 448-449).  Ultimately, Donahue's gun, Bailey's gun, and the cash were all stolen (see id. at 449).  The defendant was charged with nine counts of robbery in the first degree: three counts relating to the theft of Donahue's gun, three counts relating to the theft of Bailey's gun, and three counts relating to the theft of the Money Center's property (see id. at 449 and n 2).

This Court held that the sentences imposed on the counts relating to the theft of Bailey's gun could run consecutively to the sentences imposed on the counts relating to the thefts from Donahue and the Money Center because "the violent and repeated shooting of Bailey was a separate and distinct act which was not a material element of the forcible theft of Donahue's gun and the payroll bags" (id. at 454).  Rather, the forcible theft of Donahue's gun and the payroll bags was accomplished through the display of a firearm alone.  The Court further held, however, that the sentences imposed on the counts relating to the theft of Donahue's weapon and the theft of the Money Center's payroll bags had to run concurrently.  The Court reasoned that the fact "that defendant was armed and displayed an obvious and actual firearm before Donahue was a necessary element of the robbery of the payroll belonging to the Money Center," and

that the crimes were not separate and distinct because "[d]espite the fact that the stolen property belonged to two different victims, it is *the acts of the defendant* that control" (id. at 453 [emphasis added]).  In other words, the actus reus of the counts pertaining to the robberies of Donahue and the Money Center "was merely a single inseparable act violative of more than one statute which thereby warrants a single punishment" (id. [internal quotation marks and emphasis omitted]).

Importantly, the Court required the sentences to run concurrently even though the property stolen was located in different places, and therefore required the defendant and/or his accomplices to engage in at least two different acts, or "bodily movement[s]" (see Laureano, 87 NY2d at 644, citing Penal Law § 15.00 [1]), to accomplish the theft of property.  Donahue's weapon was in his waistband when it was taken, and the payroll bags were in the vehicle (see Ramirez, 89 NY2d at 448-449). Thus, although the gunmen engaged in only one threat of force to accomplish those takings -- the display of weapons and an order to get on the ground -- the gunmen had to engage in separate "acts" or "bodily movements" to complete the robberies by taking Donahue's gun from his waistband and by removing the payroll bags from the vehicle.  The Court nevertheless required the sentences imposed on the counts relating to the theft of Donahue's gun to run concurrently with the sentences imposed on the counts relating to the theft of the payroll bags from the Money Center

(see id. at 453-454).

With this understanding of Ramirez, the People's argument that a consecutive sentence was authorized for the completed robbery because defendant engaged in a separate act or "bodily movement" to take the purse does not withstand scrutiny. The victim of the completed robbery testified at trial that as she was complying with defendant's demands to drop to the ground, she put her purse on the ground next to her. She further testified that defendant "kicked [her] purse over to his friend and told him to pick it up, which he did." She did not testify that defendant accomplished the taking of her purse through any additional act or threat of force directed specifically at her. Under Laureano and Ramirez, then, the relevant actus reus was the same for both the completed robbery and the attempted robberies -- the display of a firearm -- and the taking of the purse was not a separate and distinct act authorizing consecutive sentences. Concurrent sentences were therefore required.

If the People were correct about the proper interpretation of Ramirez, *consecutive* sentences would have been permissible for the theft of Donahue's gun and the theft of the payroll bags. The rule that can be distilled from Ramirez is that separate and distinct acts of force or threats of force against a particular victim may authorize consecutive sentences for robbery, but if a single act or threat of force is used to accomplish a robbery of multiple victims, the mere taking or

asportation of property, even if accomplished through separate "bodily movements," does not allow for consecutive sentencing. The People do not argue that defendant's act of kicking the purse to his accomplice was an act of force or threat of force against the robbery victim herself, so the Court's analysis in Ramirez regarding the counts pertaining to the robbery of Bailey is inapposite, inasmuch as a separate and distinct act of force was committed against Bailey (see Ramirez, 89 NY2d at 454).  Here, defendant concedes that a consecutive sentence would have been authorized had he committed a separate act or threat of force against the robbery victim herself.

One might posit that our holding in Ramirez was a result of the fact that the Money Center was a company and not a human victim against which an act or threat of force could be directed.  We stated in Ramirez, however, that "[d]espite the fact that the stolen property belonged to two different victims, *it is the acts of the defendant that control*" (id. at 453 [emphasis added]).  We have consistently examined the actions of the defendant, and not the number of victims, even those of the human variety, in determining whether consecutive sentences were legally authorized.  For example, in People v McKnight (16 NY3d 43 [2010]), we held that consecutive sentences were permissible for the shooting of two victims because the defendant and his accomplice fired multiple shots at the victims, but we noted that "[i]f it were otherwise -- if the two shots that hit [the first

victim] were the only shots fired at [the second victim] -- we would agree that concurrent sentencing was mandated" (id. at 48-49). Similarly, in People v Battles (16 NY3d 54 [2010], cert denied -- US --, 132 S Ct 123 [2011]), we held that consecutive sentences were authorized where the defendant engaged in separate acts by pouring gasoline over three victims (see id. at 57, 59). With respect to a fourth victim, however, who "was never doused with gasoline, but rather, was sprayed as a result of the dousing of the others," we held that a concurrent sentence was required (id. at 59).

Here, defendant accomplished both the completed robbery and the attempted robberies through an action directed toward the group as a whole -- he waved the gun at the group collectively and threatened them collectively with death if they did not comply with his demands to get on the ground. Again, the taking of the purse did not involve a separate act or threat of force directed against the robbery victim herself, but rather the mere asportation of property, which, pursuant to our holding in Ramirez, does not authorize consecutive sentences under Penal Law § 70.25 (2). The People did not meet their burden to demonstrate that defendant directed any act of force or threat of force at the robbery victim in particular.

In contrast, under the majority's holding, even if a robbery of a group of people is accomplished through one singular act of force or threat of force, a consecutive sentence will be

authorized for each instance where the defendant engages in a separate bodily movement to accomplish the taking of property. This holding is contrary to our decision in Ramirez.[1]

Whether the taking of the purse was a separate and distinct act is not a factual question for the trial court to resolve in its discretion. This Court has no power to resolve factual questions. Accordingly, if the issue whether the People have met their burden to demonstrate that the defendant committed the crimes through separate and distinct acts were a factual question, this Court would have no power to address it. Yet we have addressed it, many times (see e.g. Rodriguez, 25 NY3d at 244-245 [holding that the People demonstrated that the crimes at issue were committed by separate and distinct acts]; Ramirez, 89 NY2d at 452-454 [rejecting the People's argument regarding separate and distinct acts with respect to certain counts, but holding that the People met their burden on that issue with respect to other counts]; Laureano, 87 NY2d at 644-645 [holding

_____

[1] Moreover, the majority's holding could produce anomalous results. If, for example, a defendant approaches a group of five people, displays a firearm, and collectively directs them to throw their wallets toward him, the defendant's separate acts of bending down to pick up each of the five wallets from the ground will permit five consecutive sentences for robbery under the majority's analysis. The majority states that consecutive sentences may be legally authorized under that scenario, but that the sentencing court would have the discretion to impose either consecutive or concurrent sentences (see majority op at 10-11 n 4). In my view, however, Ramirez requires the conclusion that consecutive sentences would not be permissible in that scenario, and the sentencing court would be required by law to impose concurrent sentences.

that the People failed to meet their burden to demonstrate that the crimes involved two separate and distinct acts]).  These cases demonstrate that although the issue involves some factual analysis, we have treated the issue whether the People met their burden to demonstrate that the crimes were committed through separate and distinct acts as a legal question.  Once the People have met their legal burden to establish that the crimes were committed through separate and distinct acts, *then* the sentencing court has the discretion to impose consecutive or concurrent sentences (see Rodriguez, 25 NY3d at 244).  Here, the People did not meet that burden.

I therefore would hold that the taking of the purse was not a separate and distinct act authorizing a consecutive sentence for the completed robbery.  Defendant legally could be charged with four different counts of robbery or attempted robbery, one for each victim, but because defendant accomplished those robberies through the same act or threat of force, concurrent sentences were required under the Penal Law.  I would modify the order of the Appellate Division by requiring that the sentence imposed on count two be served concurrently with the sentences imposed on counts five through seven.

II.

With respect to the second appeal, the sentence imposed on count one, charging defendant with attempted felony murder in the first degree, was required to run concurrently with the

sentence imposed on the underlying felony.  I agree with the majority that, due to the possibility that the People could correct their failure to specify the underlying felony during a retrial on count one, defendant's plea was rational and need not be vacated.  I write separately, however, because in my view, the Court should definitively reject the People's argument that the sentence imposed on the attempted first-degree felony murder charge could run consecutively to the sentence imposed on the underlying felony.

A.

I agree with the majority's observation that this Court has not yet directly addressed whether a sentence imposed upon a conviction of murder in the first degree pursuant to Penal Law § 127.27 (1) (a) (vii), i.e., first-degree felony murder, must run concurrently with the sentence imposed on the underlying felony (see majority op at 12).  New York courts have long held, however, that a sentence imposed upon a conviction of second-degree felony murder must run concurrently with the sentence imposed on the underlying felony (see e.g. People v Parks, 95 NY2d 811, 815 [2000]; People v Dennis, 91 AD3d 1277, 1280 [4th Dept 2012], lv denied 19 NY3d 995 [2012]; People v Faulkner, 36 AD3d 951, 953 [3d Dept 2007], lv denied 8 NY3d 922 [2007]; People v Leftenant, 22 AD3d 603, 605 [2d Dept 2005], lv denied 6 NY3d 755 [2005]; People v Slater, 268 AD2d 260, 260-261 [1st Dept 2000], lv denied 94 NY2d 892, 925 [2000]; People v Leo, 255 AD2d

458, 459 [2d Dept 1998], lv denied 93 NY2d 973 [1999]).  The

People do not contest this authority.

Rather, the People argue that the same rule should not

apply to first-degree felony murder.  The People contend that, in

contrast to second-degree felony murder, with respect to first-

degree felony murder, "the 'in furtherance' element of the

attempted murder is part of the mens rea rather than the actus

reus," and, as such, "the acts constituting robbery and attempted

murder are separate even though the intents served by those

separate acts are interrelated."

The People's argument is without merit.  Both the

second-degree felony murder statute and the first-degree felony

murder statute require the homicide to be committed "in the

course of and in furtherance of" the underlying felony or

immediate flight therefrom (see Penal Law §§ 125.25 [3]; 125.27

[1] [a] [vii]).[2]  To the extent the People's argument is based on

the mens rea of first-degree felony murder, which, unlike second-

degree felony murder, requires the defendant to commit the murder

intentionally (see Penal Law § 125.27 [1]), this Court has always

held that it is the acts of the defendant, and not the intent

with which he or she acted, that control for consecutive

sentencing purposes (see McKnight, 16 NY3d at 49; People v

Frazier, 16 NY3d 36, 41 [2010]; Laureano, 87 NY2d at 644).

_____

[2]     For this reason, the People's reliance on People v
Rodriguez, where consecutive sentences were permissible (25 NY3d
238, 245 [2015]), is unavailing.

To the extent that the People argue that first-degree felony murder is distinguishable from second-degree felony murder because first-degree felony murder requires both an underlying felony and an intentional killing committed by the defendant himself, that argument is refuted by the Court's holding in People v Rosas (8 NY3d 493 [2007]).  In Rosas, the defendant shot his former girlfriend and her husband to death (see id. at 495). Even though the victims were killed by separate shots, and the defendant therefore engaged in two separate actions to accomplish the killings, the Court held that concurrent sentences were required for each count of murder in the first degree because Penal Law § 125.27 (1) (a) (viii) "requires multiple victims to constitute a single offense and thus contemplates the possibility of multiple shots" (id. at 499).  The Court reasoned that it must "consider the *entire* actus reus of the offense with *all its components* when determining whether consecutive sentences are appropriate" (id. at 497 [emphasis added]).

Likewise, the first-degree felony murder statute requires both an intentional killing *and* an underlying felony to constitute a single offense, and therefore contemplates the possibility of multiple acts or "bodily movements" encompassed within a single offense (see Penal Law § 125.27 [1] [a] [vii]). Consequently, the fact that defendant here engaged in separate acts to accomplish the underlying felony and to shoot the male victim does not authorize consecutive sentencing, because the

statute requires that the defendant commit both an intentional homicidal act and an underlying felony to be guilty of the offense.

If the People wanted to ensure the possibility of a consecutive sentence on the attempted murder count, the People could have charged defendant with attempted second-degree murder under Penal Law § 125.25 (1), which would not have required proof that defendant shot the victim during the course of and in furtherance of a robbery or attempted robbery.  Then, however, the People would have been unable to request a sentence with a maximum term of life imprisonment (see generally Rosas, 8 NY3d at 499-500).

The majority acknowledges that at the time of defendant's plea, there was case law from the Second and Third Departments holding that a sentence for first-degree felony murder must run concurrently with the sentence imposed on the underlying felony (see majority op at 12, citing People v Cherry, 46 AD3d 1234, 1238 [3d Dept 2007], lv denied 10 NY3d 839 [2008]; People v Middleton, 32 AD3d 557, 557-558 [3d Dept 2006]; People v Alves, 288 AD2d 483, 484 [2d Dept 2001]).  One could interpret the Fourth Department's decision here as a holding that the sentence imposed on the attempted first-degree felony murder count could have run consecutively to the sentence imposed on the underlying felony (see People v Couser, 126 AD3d 1419, 1422 [4th Dept 2015]).  The Court should reject the People's arguments and

conclusively hold that the sentence imposed on a first-degree felony murder charge must run concurrently with the sentence imposed on the underlying felony.[3]

## B.

The People failed to specify in the indictment or during trial which count of robbery or attempted robbery served as the underlying felony for the attempted murder count, and the court did not clarify that issue in its instructions to the jury. It is well settled that in that situation, the sentence imposed on the attempted first-degree felony murder count was required to run concurrently with *all* the sentences imposed on the robbery and attempted robbery counts (see Parks, 95 NY2d at 815).

Before retrial on count one, defendant pleaded guilty to attempted murder in the first degree as charged in the indictment, not to a lesser included offense. Although he also received the minimum sentence of 15 years' to life imprisonment

---

[3] The majority concludes that it has no occasion to address the issue in part because defendant failed to raise the issue of the validity of his plea as it relates to his misunderstanding of his sentencing exposure until his reply brief (see majority op at 15). I respectfully disagree. In his main brief filed with this Court, as part of his contention that the record fails to demonstrate that his guilty plea was knowing, voluntary, and intelligent, defendant argued that his misunderstanding of his sentencing exposure "casts substantial doubt on the voluntariness of the plea as it appears to undermine any reasonable motive [defendant] might have had for pleading guilty to a crime that he insisted he did not commit." Defendant contended that it should be clear under the circumstances that a decision to plead guilty "would *not* be knowing and rational if there is no legal possibility of consecutive sentences."

as part of the plea bargain, the possibility that he could receive the maximum sentence of 25 years to life if convicted on count one after retrial would have been of no consequence to defendant, who was already serving a determinate term of 48 years' imprisonment, so long as the sentence on count one was concurrent. As I have explained, defendant would have been entitled to a concurrent sentence on count one by law even if he were convicted after trial. If not for the possibility that, during the retrial on count one, the People could have specified which robbery or attempted robbery was the underlying felony for the attempted felony murder charge, I would agree with defendant that vacatur of his plea is required.

As the majority notes, however, the People could have specified during a retrial on count one that the underlying felony for the attempted felony murder was count five, charging defendant with the attempted robbery of the shooting victim (see majority op at 15-16). I agree with the majority that the possibility that the People could have corrected that lack of specificity during a retrial on count one renders defendant's decision to accept a plea bargain in which he received the minimum concurrent sentence knowing and rational. I therefore concur in the majority's resolution of the second appeal.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

<u>For Case No. 166</u>:  Order, insofar as appealed from, affirmed. Opinion by Judge Abdus-Salaam.  Chief Judge DiFiore and Judges Pigott and Garcia concur.  Judge Fahey dissents in part in an opinion in which Judges Rivera and Stein concur, Judge Stein concurring in so much of the opinion as relates to the appeal herein.

<u>For Case No. 167</u>:  Order affirmed.  Opinion by Judge Abdus-Salaam.  Chief Judge DiFiore and Judges Pigott, Stein and Garcia concur, Judge Stein concurring in so much of the opinion as relates to the appeal herein.  Judge Fahey concurs in result in a separate concurring opinion in which Judge Rivera concurs.


Decided November 22, 2016